DE BERNARDI, *Appellant*, v. McELROY *et al.*

Division One, June 20, 1892.

1. **Sale of Land:** VENDEE'S DEFAULT: EJECTMENT. Where one goes into possession of land under a contract of purchase and makes default in the payment of the purchase money, the vendor may recover the premises in ejectment.

2. ———: ———: ———. The vendee in such action can defend his possession only by showing performance of the contract on his part.

3. ———: ———: ESTOPPEL. Plaintiff, the vendee of an undivided half of certain land under a deed reserving a lien in the vendor, having failed to pay a note given for the purchase price, the parties executed a bond in settlement whereby the vendor agreed to execute

within a stated time to plaintiff a warranty deed to the whole tract, and to deliver possession from the date of the execution of the agreement, and the plaintiff agreed to pay a stated consideration, the prior contracts to be "substituted by this settlement" and the purchase note to be void; neither party ever offered to perform the contract. The interest of the vendor was sold at sheriff's sale, and ultimately conveyed to defendant. *Held*, that the bond estopped plaintiff to claim an undivided half under his original deed, and that he could not recover thereon in ejectment.

4. ———: ADVERSE POSSESSION: LIMITATION. It being admitted that the possession of the vendor was friendly as to the bond made in settlement, after its execution, and it being claimed that his possession was adverse only as to the deed first made, one claiming title under the sheriff's deed was not entitled to a decree confirming title in him on the ground that the statute of limitations had run against the land.

5. ———: ———: ———. . There must be an intent to claim land to put the statute of limitation in operation, and the claim to be of any avail must be to the entire title, not simply to a part of it.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED.

*R. C. Sneed* and *Henry N. Ess* for appellant.

(1) The court erred in allowing the defendant McElroy to amend his amended answer at the trial after all the evidence was in, by inserting an entire new defense against the objections of the plaintiff. *Garton v. Canada,* 39 Mo. 364; *Renfrew v. Price,* 22 Mo. App. 403; *Alexander v. Luke,* 11 Mo. App. 597: *Butcher v. Death,* 15 Mo. 271; *Irwin v. Chiles,* 28 Mo. 576; *Phillips v. Broughton,* 30 Mo. App. 148; *Parker v. Rhodes,* 79 Mo. 88; *Scoville v. Wagner,* 79 Mo. 450. (2) Said amendment states no estoppel. *Burke v. Adams,* 80 Mo. 504; *St. Louis v. Schulenberg,* 98 Mo. 613; *Blodgett v. Perry,* 97 Mo. 263; Bigelow on Estoppel [2 Ed. 1876] pp. 485, 486; *Henshaw v. Bissell,* 18 Wall. 270;

*Brant v. Iron Co.*, 93 U. S. 335–337, and cases cited; ·2 Herman on Estoppel [Ed. 1886] sec. 987, p. 1110. (3) This contract of 1875 is too uncertain in its terms for De Bernardi to have it enforced specifically. *Foster, v. Kinaman*, 54 Mo. 488; *Mastin v. Hally*, 61 Mo. 196. (4) Maxwell admitted De Bernardi's right, and, hence, the possession was friendly—never became adverse by notice or otherwise. *Liggett v. Morgan*, 98 Mo. 39, ·et seq.; *Gordon v. Eans*, 97 Mo. 587; *Wilkerson v. Thompson*, 82 Mo. 317; *Budd v. Collins*, 69 Mo. 129, ·et seq.; *Goodwin v. Goodwin*, 69 Mo. 617. (5) The contract of 1875 is not a conveyance by Maxwell to De Bernardi. It is not a cancellation nor an agreement to cancel the deed of 1869. Defendant McElroy must ·either adopt the contract of 1875 and be bound by all its provisions and subject to all its requirements, or he must reject it all. He cannot adopt part and reject the balance. *Estes v. Reynolds*, 75 Mo. 565; *Garrett v. Morton*, 44 Mo. 275.

*Karnes, Holmes & Krauthoff* for respondents.

(1) This being an action of ejectment plaintiff must recover if at all on the strength of his own title ·or right to possession. Until the purchase· money is fully paid, De Bernardi cannot maintain ejectment against Maxwell or McElroy, his grantee in possession ·of the premises. *Peters v. Clements*, 46 Tex. 114; *Webster v. Mann*, 52 Tex. 416; *Baker v. Ramey*, 27 Tex. 52; *Johnson v. Houston*, 47 Mo. 227; *Hubble v. Vaughan*, 42 Mo. 138; *Carr v. Holbrook*, 1 Mo. 240; *Bank v. Bradley*, 15 Lea (Tenn.) 279; *Dingley v. Bank*, 57 Cal. 467; *King v. Ass'n*, 1 Woods, 386. (2) Even if the bond had· been silent as to possession the vendee would not be permitted to have the consideration for which he had bargained before complying with the

terms of the contract on his part. Under such circumstances the law fixes the right of possession with the vendor. *Burnett v. Caldwell,* 9 Wall. 290; *Holmes v. Schofield,* 4 Black, 171; *Brumfield v. Brown,* 7 Black, 142; *Gaven v. Hagen,* 15 Cal. 208; *Suffern v. Townsend,* 9 Johns. 35; *Ervin v. Olmstead,* 7 Cowen, 229. And such right passes to the vendor's grantee. *Gaven v. Hagen,* 15 Cal. 208; *Johnson v. Houston,* 47 Mo. 227. (3) That plaintiff cannot maintain ejectment under this bond for a deed abundantly appears from the authorities already cited and which might be multiplied indefinitely. *Gibbs v. Sullens,* 48 Mo. 237; *Siemers v. Schrader,* 88 Mo. 20. (4) The bond of 1875 was an unequivocal and solemn assertion of sole proprietorship and possession by Maxwell, and an equally unqualified admission thereof by De Bernardi. From that time adverse possession commenced and the statute of limitations began to run. *Warfield v. Lindell,* 30 Mo. 272; *Leonard v. Leonard,* 10 Mass. 281; *Peppard v. Deal,* 9 Pa. St. 140. (5) The judgment on the uncontradicted evidence was for the right party, and should be affirmed.

BLACK, J.—The plaintiff De Bernardi commenced this suit in ejectment against Klein and McElroy on July 20, 1887, to recover an undivided one-half of about forty acres of land near Kansas City. Klein answered by way of a general denial. McElroy, besides a general denial, set up an equitable defense praying for affirmative relief. After all the evidence had been introduced, he filed, against the objections of the plaintiff, a third defense, setting up an alleged estoppel. The trial court found for the defendants and gave McElroy the affirmative relief prayed for.

The evidence discloses the following facts: Thomas F. Maxwell acquired the forty acres under partition.

proceeding between himself and brothers and sisters. He conveyed the undivided half thereof to the plaintiff De Bernardi, by a deed dated December 13, 1869, for the consideration of $1,200, for which De Bernardi executed his note to Maxwell, due in five years. The deed recites this note, and to secure the payment thereof reserves to Maxwell a vendor's lien. At the same time these parties entered into a written contract whereby they agreed to plant fruit trees and vines on the land, and cultivate the property jointly for a period of five years. Both parties were in possession as joint owners until 1872, when De Bernardi left the property in the sole possession of Maxwell. De Bernardi having failed to pay the before-mentioned note, Maxwell brought suit thereon early in 1875, praying for a foreclosure of his vendor's lien. Pending this suit the parties came to a settlement, evidenced by a contract in writing and under seal, dated March 13, 1875, recorded in 1876.

By this bond, hereafter called the agreement of 1875, Maxwell as party of the first part agreed "to furnish and deliver to said party of the second part (De Bernardi) within ten days from the date hereof a good and sufficient warranty deed and the proper and sufficient evidence of a perfect title' to the following described real estate." Then follows a description of the land, the undivided half of which was conveyed by the deed of 1869 and three acres additional thereto. The contract concludes: "And said first party further agrees to deliver the possession of said property to the said second party from the date thereof, and further agrees that all contracts and agreements entered into between said first party and said second party previous to the date of this instrument, concerning and relating to said above-described property, and all notes promissory, shall from the date of this instrument be void and of none effect, **and** shall be substituted by this settlement

and contract, and more especially a certain promissory note dated at Independence, Missouri, December 13, 1869, and given by said party of the second part to said party of the first part for the sum of $1,200, and upon which suit has been brought, shall by this instrument and the settlement of it set forth be declared void and of none effect, and the said note forthwith shall be canceled and delivered up to the said party of the second part as his property.

"And the said second party, in consideration of the promises and agreements hereinbefore made by the said party of the first part, and of the premises, agrees, upon the furnishing to him by the said first party the evidence of perfect title and the deed as hereinbefore set forth, to pay down in cash to said first party the sum of two hundred and ninety-five dollars ($295), and to execute and deliver to him his four promissory notes for $300 each—in all $1,200—to bear interest from date at the rate of eight per cent. per annum, the interest to be paid annually, and said notes to become due in five years from the date thereof; that is, to pay in five years from the delivery of said notes as herein provided for—each of said notes to be secured on a specific part of said real estate, the intention being that when any one of said notes is paid off a specific proportion of said land shall be relieved of all incumbrance."

The interest of Thomas F. Maxwell was sold at a sheriff's sale and purchased by Symington who conveyed the same to Matilda Maxwell, the mother of Thomas F. Maxwell. She at all times held the title for the use and benefit of her son Thomas. At the request of Thomas, she conveyed the forty acres to the defendant McElroy on June 20, 1880, for the consideration of $1,500 paid to Thomas.

The plaintiff, as has been said, left the premises in the sole possession of Thomas F. Maxwell in 1872.

The latter was in possession at the date of the agreement of 1875, and he and defendant McElroy have had possession every since that date. The plaintiff never at any time tendered to Maxwell or McElroy the money and notes which he agreed to pay and execute for the premises by the agreement of 1875. On the other hand Maxwell never tendered plaintiff a deed. Thus matters stood from 1875 to the commencement of this suit in July, 1887.

1.   The plaintiff by this suit seeks to disregard the agreement of 1875 and recover the undivided half of the land by virtue of his deed of 1869. This he cannot do. That deed vested in him the undivided half and gave him the right of the possession of that interest. But he failed to pay the purchase price, and, hence, the agreement of 1875. By that agreement Maxwell occupies the position of vendor, and the plaintiff that of vendee, of the forty acres and three acres in addition thereto. That agreement does not in terms, it is true, reconvey to Maxwell the one-half before conveyed to De Bernardi; but it does provide that the unpaid note given for that interest shall be void and of no effect. The new contract is made a substitute for the prior transactions. While it does not in terms reconvey the undivided half it treats Maxwell as the sole owner. This is plain, for Maxwell agrees to convey the entire property, and the plaintiff agrees to pay Maxwell therefor $259 cash, and execute his four notes for $300 each, the notes to be secured on the land. Maxwell also agrees to deliver possession to plaintiff "from the date thereof." From what date? Manifestly from the date when the contract should be executed. This agreement by its own terms establishes Maxwell as the rightful possessor of the entire property from the date thereof until plaintiff should perform the conditions on his

part. This he has never done. As has been said this contract of 1875 placed Maxwell in the position of vendor of the entire property.

The law is well settled that where one goes into possession under a contract of purchase, and then makes default in the payment of the purchase price, he may be turned out by the vendor in an action of ejectment. And in such an action the vendee can only defend his possession by showing performance of the contract on his part. *Gibbs v. Sullens*, 48 Mo. 237; *Fulkerson v. Brownlee*, 69 Mo. 371; *Rose v. Perkins*, 98 Mo. 253. If Maxwell had placed the plaintiff in possession, he could now turn him out by ejectment. The plaintiff being in default, it must follow that he cannot recover possession of the land. Even where the contract is silent as to possession, the vendee is not entitled to it until he has performed all the conditions which entitle him to a deed from the vendor. *Burnett v. Caldwell*, 9 Wall. 290; *Erwin v. Olmstead*, 7 Cowen, 229; *Holmes v. Schofield*, 4 Black, 171.

The fact that this agreement of 1875 did not reconvey the undivided half to Maxwell is wholly immaterial. That agreement amounts to a solemn assertion on the part of both Maxwell and De Bernardi that Maxwell was the owner of the entire property. De Bernardi cannot be heard to say he is the owner of a half interest. His bond estops him from setting up any such a claim in opposition to Maxwell and his grantees. The estoppel accomplishes all that a reconveyance could accomplish. De Bernardi being in default in the performance of that contract has not a shadow of right to recover in this action. The judgment in the ejectment branch of the case is for the right party on the unquestioned evidence.

2.   We now come to that part of the judgment giving defendant McElroy affirmative relief on his second defense.   This defense sets out the deed of 1869, conveying a one-half interest to the plaintiff; the contract of 1875, with the averment that the deed became merged in and substituted by that contract; the conveyance of the entire property to McElroy in June, 1880; and it then avers that defendant and Maxwell have had exclusive adverse possession of the land since March 13, 1875.   The prayer is that the deed of 1869 be decreed null and void, and that the interest acquired by the plaintiff by that deed be vested in the defendant.   To this second defense the plaintiff replied by way of a general denial.   The trial court found the issues made by this defense in favor of the defendant,   and   entered   a   judgment   divesting   the plaintiff of "all record and other title to said real estate, and every part thereof," and vesting the same in the defendant.

This decree of title has nothing upon which to stand save the finding for defendant on the statute of limitations, and, if not supported by that finding, it cannot stand at all.   As has been before stated, the position of Maxwell and the plaintiff was that of vendor and vendee under an executory contract, the vendor being in possession.   Plaintiff as vendee in that agreement acquired an equitable interest in the property; for in equity the vendor holds the title in trust for the vendee.

There was a vast amount of evidence produced on this issue of ten years' adverse possession, which need not be detailed as we understand the case.   The defendant does not claim that this equitable title created by the agreement or title bond of 1875 is cut off by limitation.   This is shown by the prayer for affirm-

ative relief, for it asks no relief as against that contract. It only seeks relief against the deed of 1869. Again it is conceded in the defendant's brief that the possession of Maxwell from 1875 on was friendly to the plaintiff as to the contract of 1875. The claim only is that the possession was adverse as to the deed of 1869.

We are at a loss to see how the statute of limitations can run against the deed and not against the contract—against the seeming legal title in the plaintiff and not against the conceded equitable title in him. There must be an intent to claim the land, to put the statute of limitations in operation, and the claim to be of any avail must be to the entire title, not simply to a part of it. *Redell v. Shaw,* 59 N. Y. 49; *Davenport v. Sebring,* 52 Iowa, 367.

We held in *Gardner v. Terry,* 99 Mo. 523, that one in possession of land who had acquired title as against a deed of trust in the nature of a mortgage could maintain a suit to remove the deed of trust as a cloud on his title; that a title acquired by the statute of limitations could be relieved from a cloud cast thereon by a recorded instrument the same as a title acquired in any other way; and this ruling is not peculiar to this court. *Arrington v. Liscom,* 34 Cal. 365; *Alexander v. Pendleton,* 8 Cranch, 462. But the difficulty here is that we are unable to see how the statute of limitations can be made to run against the deed of 1869, and not against the contract of 1875. If the statute constitutes any bar, it must be a bar to any and all interests which the plaintiff had in the land.

It is not necessary to consider the third defense setting up an estoppel, for it was not designed to furnish a ground for affirmative relief. The appellant has made and discussed many other questions in his brief, but it must be apparent that they need not be considered.

The judgment for the defendant on the ejectment branch of the case is affirmed, but that part of the judgment giving affirmative relief is reversed. The plaintiff will pay one-half of the costs of this appeal, and the defendant McElroy the other half. All concur.