GANTT, P. J.
This case has been transferred to this ' court because one of the judges of the Kansas City Court of Ajipeals deemed the opinion of Judge Gill herein to be in conflict with the decision of this court in Johnson-Brinkman Com. Co. v. Central Bank, 116 Mo. 558, and Johnson-Brinkman Com. Co. v. Railroad, 126 Mo. 344. A careful reading of Judge Gill’s opinion will show the distinction between the cases.
In the Johnson-Brinkman cases the facts were unknown to plaintiff when it attached, and it dismissed the first action before bringing the second; here, the plaintiff knew all the facts, and its first action was still pending when it proved up its claim. The two actions were absolutely irreconcilable, and we agree with Judge Gill that it had no right to prove up its claim for the goods after having repudiated the sale for fraud, and replevied and sold the goods.
The judgment of the circuit court is reversed, and the opinion of the Kansas City Court of Appeals, herewith filed, is affirmed.
Burgess, J., concurs; Sherwood, J., absent.
IN TUB KANSAS CITY COURT OE APPEALS.
GILL, J.
Tn February and March, 1894, Abe Keller, who was then a dry goods merchant at Lamar, Mo., purchased of plaintiff, a corporation doing business at St. Louis, goods to the amount of $1,532.34. On April 3d, 1894, Keller made a voluntary assignment for the benefit of his creditors and Warden became assignee and took possession of the entire stock of goods belonging to the Keller store at Lamar, among which were the goods bought from the plaintiff, or such of *587 them as were yet unsold. On April 14th, 1894, plaintiff instituted an action in replevin against Keller and Warden, for the recovery of the goods composing the bill of $1,532.34, before mentioned; and on the writ therein issued, the sheriff took from the assigned stock such as could be found and identified as belonging to that bill (amounting to about $900 in value) and turned the same over to plaintiff, who subsequently sold them to another party and appropriated the proceeds. The 5th day of June following was the time set by the notice of the assignee to hear and allow claims; and notwithstanding the former commencement of the action to recover the goods (and which suit was still pending) the plaintiff on that day presented its sworn account of $1,532.34, for goods sold and delivered and asked the assignee to allow the same. The assignee refused to allow the claim and plaintiff appealed to the circuit court, where the case was heard by the court, February Jth, 1895, and judgment rendered in plaintiff’s favor, allowing its claim for the full amount and interest.
As already stated, when the plaintiff’s claim was presented to and heard by the assignee, June 5, 1894, the action theretofore commenced by the plaintiff to recover the goods was still pending, and continued so until it was called for trial December 28th, 1894, when plaintiff dismissed it. At the date of dismissal, the defendant assignee requested the court to assess his damages, which was done, but not, however, until February 11th, 1895, when, on hearing the evidence, the court found the damages to be $880.94, for which the defendant had judgment. How this matter, occurring February 11, 1895, got into the record of this case, when the final judgment was rendered February 'Tth — four days before — is difficult to understand.
I. In our opinion, there is no principle of law that will sustain the judgment of the lower court. The assignee was right in rejecting plaintiff’s claim, and the circuit court should have sustained his judgment. Although ou” Supreme Court, *588 by its late decision in Johnson-Brinkman Com. Co. v. Railroad (126 Mo. 344), has materially modified the doctrine of election, as it relates to a choosing between inconsistent remedies, I take it that there is something of it left — sufficient, it seems, to justify the action of the assignee in declining to allow plaintiff’s claim, when it was presented on June 5, 1894. Let us observe the attitude of this plaintiff at that time. A few months before that, and a short time prior to the assignment, the plaintiff had sold to Keller a lot of goods, which the vendee had taken into his store at Lamar. A few days after the assignment, plaintiff appears, and (doubtless on the charge, of Keller’s fraud or the like) brings replevin and takes the goods it had sold from the possession of the assignee, thereby giving notice of a rescission of the contract of sale and of its intention to reclaim the property. The goods (or at least a large portion of them) were, by this means,, taken back into plaintiff’s custody, and it then sold them. And then, having repudiated the sale, and having through the instrumentality of the replevin writ repossessed itself of the goods, it appears before the assignee’s court and asks an allowance of its entire claim against the estate of its once vendee. In the light of any principle of law or justice, what could the assignee do but reject the claim? Bear in mind that the replevin suit was still pending; that plaintiff had the goods, or rather, the money arising from a sale thereof, made by itself; and that there was not even an offer to dismiss the action, or to return the goods or their proceeds. LIow could the plaintiff, then, consistently set up a claim for $1,532.34, goods sold to the assignor, when it had rescinded the sale, reclaimed the goods which it then used and turned to its own account, and was still persisting in its former course of action ? It is true that more than six months after presenting its claim for allowance, the plaintiff did dismiss the replevin suit; and it further appears from a kind of supplemental record, or statement, contained in the abstract that after this case was tried and judgment rendered in the circuit *589 court there was an assessment of damages on the plaintiff’s replevin bond. But all this combined did not improve the plaintiff’s situation, as it appeared in June, 1894, when, as a matter of legal right, it demanded an allowance of its claim by the assignee.
On April 14th, 1894, the date of the instruction of the replevin suit, the plaintiff had opened to it either of two courses: That is, to affirm the sale and rely on the recovery of the amount of its account against Keller, or to disaffirm the sale and sue for the return of the goods. With full knowledge of the facts, the plaintiff elected to pursue the latter. According to the overwhelming trend of the authorities, this would be sufficient to fasten on the plaintiff a conclusive election to pursue one of two inconsistent remedies, and it would not thereafter be permitted to abandon this and resort to the other. [Johnson-Brinkman Com. Co. v. Railroad, 52 Mo. App. 407, and authorities at page 414.] The Supreme Court, however, on a subsequent consideration of the same case, decided that this election was not so binding and conclusive as to preclude the plaintiff from subsequently dismissing the first suit brought and instituting the other inconsistent action, “in the absence of intervening rights or injury or change of'position by reason of the former suit.” In other words, if it appeared that no third party, nor the defendant, was injured by the subsequent change of remedy, then the plaintiff might abandon the course first chosen, by dismissing the first and instituting the. other. In so holding, the court adopted what it deemed the holding in two cases decided by the St. Lords Court of Appeals, Anchor Milling Co. v. Walsh, 20 Mo. App. 107, and Lapp v. Ryan, 23 Mo. App. 436, as well as two cases decided by the New York Supreme Court reported in 33 Hun.
But in all these cases it will be observed that the plaintiff dismissed the action first brought, before attempting to prosecute another,- and it is clearly intimated that he could not be allowed to begin and prosecute the second inconsistent remedy, *590 until the first had been abandoned. So, then, these cases can not be successfully invoked to sustain this plaintiff in not only choosing and adopting one of two inconsistent remedies, but in subsequently commencing the other without having abandoned the first;
Judge Thompson had this distinction in mind when delivering- the court’s opinion in Lap,p v. Ryan, supra. In that ease, the plaintiff sought to recover in replevin two barrels of whiskey, which it had theretofore attached as the property of one Alexe, and which action was then pending. In reference to the prosecution of these two suits at the same time, it was said: “He can not in this case, at one and the same time sue for the purchase money, attaching the goods as the property of the vendee, for a debt due to him from the vendee which includes the purchase money of the identical goods, and maintain an action of replevin for the goods. In this case the very least that can be said is, that the plaintiffs were bound to stand or fall upon the state of facts existing at the time when this replevin suit was brought. And when this suit was brought, they were prosecuting a suit against their vendee . . . for the purchase money of these very goods, and they were holding the levy of an attachment upon them in the same suit. By these acts they had estopped themselves from rescinding the sale and claiming these goods as their own.”
The fact appearing in the record, that shortly after Keller’s assignment he compromised with his other creditors, and that the goods had been returned to him by the assignee, the latter being protected by a bond given by Keller, has no bearing on the merits of this case.
Neither is there anything in the suggestion that the pendency of another inconsistent action was not formally pleaded. In the first place, these proceedings before the assignee are entirely informal and do not require technical pleadings. And in the second place, the parties tried the issue in the circuit court without objection; and it is now too late to complain of *591 any sncb sufficiency in tbe pleadings, even if they required technical pleadings.
After a careful review of every point involved, we are of the opinion that the judgment on the admitted facts was for the wrong party and ought to be reversed.
Judgment reversed.
All concur.