A. J. OSBORN, Respondent, v. A. M. PAYNE et al.,
Appellants.

### Kansas City Court of Appeals, February 27, 1905.

1. **USURY: Broker's Commission: Broker's Money.** The fact that
a borrower may give a broker a commission to secure him a
loan will not make the loan usurious, but if the broker borrows
money on his own credit and loans the same to the borrower,
retaining his commission, the transaction is usurious.

2. **BILLS AND NOTES: Extension of Time: Consideration.** Where
the consideration for the extension of the time of a note is not
paid by the payor of the note but by a third party with a view
of getting the holder to affirm an illegal contract the third
party has made, it will not be sufficient to extend the time as
to said holder.

3. **USURY: Pledges: Collateral Securities.** A pledge of notes to
secure a valid indebtedness is illegal and void as to any person
whose rights are affected thereby if such debt is tainted with
usury, and the question of usury may be raised by the true
owner of such collateral notes since he is not a stranger to
such pledge.

Appeal from Jasper Circuit Court.—*Hon. Hugh C.
Dabbs,* Judge.

AFFIRMED.

*Howard Gray* for appellants.

(1) The evidence in this case shows conclusively
that the appellants were holding the note in controversy
under an express contract made with the respondent,
as all the evidence shows that they refused to make any
extension of the Randall note and were about to proceed
to collect their money on the same when the respondent
paid to them four dollars and sixty-five cents, and they
agreed to hold the note for him that they had received
from Randall and to turn it over to him upon the

payment of the amount that Randall had obtained. (2) After the respondent had full notice of the claim that usury had been exacted by appellants, he entered into a new contract with them, by the terms of which he was to pay the Randall note and they were to keep his note as collateral security. Under these circumstances the usury deal with Randall was entirely eliminated and respondent did not sustain such a relation to Randall as to permit him to raise the question of usury. (3) The instructions asked in behalf of appellants and announcing the propositions above stated should have been given. Davidson v. Dockery, 179 Mo. 679. (4) Under all the facts of this case there was no usury in the transaction. The testimony shows that appellants did not have the money to loan Randall, and they agreed to get it for him, and for this service they were to have twenty-five dollars. In carrying this out, they took the Randall note payable to one of the appellants and then gave an additional note signed by the appellant, A. M. Payne, to the bank and left all the notes with the bank as security for the Randall loan, and in this manner obtained the money.

*McReynolds & Halliburton* and *Frank L. Forlow* for respondent.

(1) The evidence in this case satisfied the court who heard the evidence, and saw the witnesses on the stand before him, that the plaintiff was entitled to recover his note and deed of trust securing the same, and the defendants, Payne and Davidson, having converted the same to their own use, the court entered judgment against them for the amount of the note at the time of the conversion. (2) The appellant says that the defendant held the note under the express agreement made with plaintiff, and as evidence of that fact cites the payment of the interest of some $4.65 for the extension of the note which Randall had given to Payne

and Davidson. The reading of the record in this case does not bear out appellants in that statement. (3) It is not true that plaintiff ever agreed to pay the Randall note as contended by appellant. He always disclaimed it and demanded his note, was continually after Randall, Payne and the other parties, insisting that the note was his property and asking for its return. (4) The appellants in this case have not only retained what they claimed they were entitled to, some $650, but also the balance of plaintiff's note, which they obtained from Randall. (5) It was not necessary to prove an agreement to pay usury by positive testimony, for the man who charges usury will not often admit it. Loan G. Co. v. Baker, 54 Mo. App. 79. (6) The lien of defendants on the note of plaintiff delivered by Randall to them having been shown to be usurious, became of no force and effect. Smith v. Moher, 64 Mo. App. 39; Johnson v. Simmons, 61 Mo. App. 395.

BROADDUS, P. J.—The facts as disclosed by the record are that, prior to the 4th day of June, 1902, the plaintiff, in connection with one Randall, concocted the following scheme: Mrs. Mary Phelps Montgomery had on the 30th day of March, 1900, executed her promissory note payable to the order of J. B. Dixon for the sum of two thousand dollars, and to secure its payment, she, on said day, conveyed to a trustee certain lands located in Jasper county, Missouri. Plaintiff was to purchase said note, cause the land to be sold by the trustee and then buy it in at the sale at less than its value, after which he would resell the same at a profit to be divided between Randall and himself. Plaintiff, in furtherance of their purpose, did buy the note which at that time had been reduced by payments to the sum of $1,500, and the same was indorsed in blank by the holder. Afterwards, plaintiff caused the land to be advertised for sale under the deed of trust, but a friend of Mrs. Montgomery interfered in some way and notice

of sale was withdrawn. The plaintiff borrowed the money to purchase the note and paid for it not only what was due, but also a bonus of one hundred dollars. Later on, the said Randall and his minor son went to plaintiff's home, for what purpose is not shown. Before they left there plaintiff gave the deed of trust and the note to Randall's son with directions to take them to Carthage and deliver them to Mr. Tyree, his attorney, with instructions to collect the interest then due. The son took the papers home and locked them in a bureau drawer where they remained during the night. The next morning Randall compelled his son to deliver them to him. He took them to Carthage and pledged them to defendant Payne as collateral security for a loan of $650. Payne did not loan him his own money but got it from a bank in the town and transferred to the bank the said deed of trust and note as collateral security for the money thus obtained. The plaintiff learned that Randall had obtained the note and transferred it to Payne. He then went to Payne and demanded the deed and the note, but Payne refused to surrender them to him. The matter was dropped by him for the time being, but he renewed it again more than once. When the interest became due on the note which Randall had given to Payne, Randall procured the amount and went with plaintiff and his lawyer to Payne's place of business where Randall placed the money on Payne's table but he failed—or refused, as some witnesses stated—to take it. But before the parties left, plaintiff took hold of the money and handed it to defendant who then received it. The object of the transaction was to get plaintiff to affirm by this act the transfer of the note by Randall to Payne. A similar ruse was adopted in the payment of $20 to extend the time of its payment, but it was shown that the money paid by plaintiff was the money of Randall. At the time Randall transferred the note to Payne as collateral security for the note to Payne for $650 he only

received from the latter $625. But they both swore that Randall was to pay Payne $25 for obtaining the loan.

The defendant Payne and his codefendant were partners engaged in the brokerage business. Defendant Payne stated that he knew Randall was not a reliable man, but as the note was indorsed in blank and the security good he loaned him the money. The plaintiff sued for conversion. The cause was tried before the court and judgment rendered for the plaintiff for the amount of the note and interest. Defendants appealed. The defendants insist that under the facts the plaintiff was not entitled to recover.

The scheme of plaintiff and Randall to defraud Mrs. Montgomery showed that neither had any regard for honesty and fair dealing. Randall's conduct in robbing his fellow-conspirator of the note and transferring it to defendant Payne showed that he had little or no more honesty. And the conduct of Payne in his effort to ensnare plaintiff by a trick in failing, or refusing, to take the interest on Randall's note from Randall and then taking it from plaintiff, so as to work an affirmance of the transaction, showed that he, too, was not very scrupulous in his manner of dealing. And we can conceive of no good reason why he should resort to such means if he obtained the note from Randall in good faith.

No instructions or declarations were given upon the part of plaintiff. The court gave two and refused two asked by the defendant. Those given are to the effect that if the court finds that the $25 retained by defendant Payne on the loan to Randall of $650 was paid to him for obtaining the money, then the same was not usury. The two refused are upon the theory that, if plaintiff paid for Randall to Payne the interest due on his, Randall's, note, or paid twenty dollars upon an agreement with Payne that he would extend

the time of the payment of the same, it was an affirmance of the transfer of plaintiff's note as aforesaid to Payne, and the finding would be for defendants. These two instructions were properly refused as plaintiff did not pay such interest on Randall's note, or money for an extension of the time of its payment. It is true, his conduct was such that he appeared anxious that Payne should receive interest on that note, and that it should be extended, but he paid neither the interest nor the money for the extension. It was the money in each instance of Randall.

Whether defendant obtained plaintiff's note in good faith or not is immaterial under the undisputed facts of the case, viz: that Randall agreed to pay $25 to defendant Payne if he would obtain for him the sum of $650, and that Payne instead of obtaining such loan borrowed the money on his own credit and loaned it to Randall. The money Payne loaned being his own, the taking of the $25 was in excess of the legal rate of interest and therefore usurious. It was not as if he had procured the bank to loan Randall $650 upon an agreement that he should receive a commission or bonus of $25, as he agreed to do, which would have relieved the transaction of the taint of usury. The law treats the transaction as it finds it, under the facts, whatever may have been the intention of the parties as to the payment of a commission for obtaining the loan.

"A pledge of notes to secure a valid indebtedness, is illegal and void as to every person whose rights are affected by it, if it is tainted with usury. The illegality of the pledge made by the fraudulent depositary or bailee of the notes, may be raised by the true owner of the notes. He, as to such a pledge, is not a stranger." [Keim v. Vette, 167 Mo. 389.] That case is decisive of this as to the illegality of the transfer of the note to defendant Payne. The decision of this point being on the merits of the case, further discussion of other matters is unnecessary.

We do not know upon what theory the court decided the cause, but the presumption is that it was upon the proper one. In any event, the decision is correct and it is therefore affirmed. All concur.