BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1916.

---

WILLIAM F. SMITH, Respondent, v. LOUIS H. BECKER and THE BRANDT INDEPENDENT MINING CO., Appellants.

**Kansas City Court of Appeals, March 6, 1916.**

1. **EQUITY: Pledges: Conditional Sales.** If doubt exists whether a transaction is a conditional sale or a pledge, the doubt is resolved in favor of its being deemed a pledge.

2. ————: ————: ————. Where the language of a contract shows the transaction was a loan and not a sale, and the evidence shows that such was the intention of the parties, the same is to be deemed a pledge, and the character of the transaction is fixed at its inception and is not changed by lapse of time. And if the relation of debtor and creditor is created, there need be no express promise to repay, nor does that duty have to be evidenced by a bond or note, since the loan implies a promise on the part of the debtor to repay that which he has borrowed.

3. ————: ————: ————. In order to determine whether a contract is a conditional sale or a mortgage, the courts will look not only to the writings, but to all the circumstances of the contract. And when the parties originally meet upon the footing of borrower and lender, the transaction will be considered a mortgage and will continue to be such unless the evidence shows the parties afterwards contracted for an absolute sale of the property without reference to the loan.

4. ———: ———: ———: Pledgor's Right Remains until Foreclosure.   Where the transaction is a pledge the pledgor's right to the property pledged remains until there has been a foreclosure of the same.

5. ———: ———: ———: ———: Pledge Tainted With Usury.   If the pledge is tainted with usury the pledge is void under the statute and the pledgee has no lien on the property covered by the void pledge.  Hence the pledgor, being entitled to the possession of the property, does not have to tender the debt in order to obtain possession.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*Jamison, Hutchinson & Ostergard* for appellants.

*Chas. M. Bush* and *R. W. Crimm* for respondent.

TRIMBLE, J.—Plaintiff, as the assignee of one Dana B. Cox, brought this suit in equity to have plaintiff declared to be the owner of 20,000 shares of stock in the Brandt Independent Mining Company, which stock plaintiff alleges Cox pledged to defendant Becker to secure a loan of $100; and which he, Becker, caused to be transferred upon the books of the company to himself without having any sale thereof made under said alleged pledge and without having taken any legal steps for the foreclosure of the same. The petition further prayed that defendant Becker be declared the trustee for the benefit of plaintiff and that title to said stock be divested out of defendant and be vested in plaintiff, and that the defendant, Brandt Independent Mining Company, be directed to issue a certificate to plaintiff for said stock and place said stock in plaintiff's name upon its books.  Ancillary to the main object sought by the suit, the petition also prayed and obtained a temporary injunction restraining Becker from selling, mortgaging or disposing of said stock in any manner.

The petition also pleaded that the pledge of said stock was void for the reason that said loan from Becker to Cox was usurious in that an unlawful rate of interest was required and exacted.

The defendant Becker's answer admitted the existence of the defendant corporation, The Brandt Independent Mining Company, under the laws of Arizona with a capital stock of five million dollars divided into five million shares of the par value of one dollar each. Said answer further admitted that said Cox was the owner of 20,000 shares of said stock, and set up that on or about the 3rd day of September, 1909, said Cox made a conditional sale of said stock to Becker for $100 with the option of buying said stock back on or before fifteen days thereafter for $110, and if said Cox did not exercise that option within fifteen days after September 3, 1909, he agreed to forfeit all right, title and interest to said stock, all of which it was alleged, was shown by a written memorandum of agreement of said date between Cox and Becker, attached as Exhibit A. to said answer. (This memorandum of agreement is the same as the one relied upon by plaintiff to show a pledge of said stock for the loan of $100; so there is no dispute over the terms of this agreement.)

The answer further admits that defendant, after having waited a reasonable length of time after the expiration of said fifteen days, to-wit, until December 9, 1909, had said stock transferred to himself.

The answer of the defendant, The Brandt Independent Mining Company, after admitting its incorporation and capitalization as hereinabove stated, alleged that on or about the 3rd day of September, 1909, Cox was the apparent owner of 20,000 shares of the capital stock of said defendant, and that on the 9th day of December, 1909, the certificates therefor were surrendered duly endorsed and cancelled, and new certificates were issued to defendant Becker. The

answer further alleged that said defendant corporation knew nothing further of the controversy between the plaintiff and Becker, had no interest therein, and asked that strict proof be required of plaintiff.

The reply denied that the stock was sold to Becker with an option of buying the same back at an increased price.

The findings and decree of the chancellor were for plaintiff. Defendants have appealed.

The original ownership of the 20,000 shares of stock by Cox is conceded by the pleadings. Becker's answer also concedes, in effect, that after waiting a reasonable time for Cox to take up the stock, he, Becker, had the stock transferred on the books of the corporation to his own name, and that no sale of the stock or foreclosure of Cox's rights therein was had. Whether the answer does this or not, Becker's evidence clearly shows that he made no sale of the stock but simply had it transferred on the books of the company to his own name and now has possession of the stock and claims it as his own.

It will be seen at once that the controlling question in the case is whether the agreement under which defendant Becker came into possession of said stock was a pledge as contended for by plaintiff, or was a conditional sale, as claimed by defendant.

Cox, offered as a witness in plaintiff's behalf, testified that shortly before September 4, 1909, he applied to one, Joseph F. Gaume, then secretary and treasurer of the Missouri Savings Bank, for a loan of $100; that Gaume did not lend him the money himself but got defendant Becker to agree to make the loan on 15,000 shares of said stock; that when he, Cox, went to Gaume with the stock to get the money, he had 20,000 shares with him and that he put up the whole 20,000 instead of the 15,000 Becker had agreed to accept. Gaume took the stock, and enclosed it in an envelope with a letter to Becker, and sent the office

boy to the latter for the $100. The boy delivered the stock and the letter to Becker who gave the boy the $100 and he returned to Gaume and the money was turned over to Cox.

The letter accompanying the stock containing the terms of the transaction together with Cox's acceptance of said terms is as follows:

"Kansas City, Mo., September 4, 1909.
Friend Louis:

You will find inclosed 20,000 shares of Brandt Independent stock in the place of 15,000 shares. I made Cox put it all up to secure the loan of $100 and if he does not pay the same plus $10 interest on or before fifteen days from date, he agrees to forfeit all his right, title and interest to the same.

Please give the boy the check and oblige.
                                JOS. F. GAUME.
I accept the above contract for the loan of $100.
                                DANA B. COX.

As hereinbefore stated, the parties concede that the foregoing is the memorandum of agreement under which the stock was transferred from the possession of Cox to that of defendant Becker.

We are of the opinion that the transaction between the two, evidenced by the foregoing contract, was a pledge and not a conditional sale. Certainly this is true when the contract is considered along with the testimony of Cox and Becker concerning the circumstances surrounding the transaction and out of which it grew.

In the first place, if doubt exists whether a transaction is a conditional sale or a pledge, the doubt is resolved in favor of its being deemed a pledge. [Book v. Beasley, 138 Mo. 455, l._c. 463; Phillips v. Jackson, 240 Mo. 310; Bender v. Markle, 37 Mo. App. 234; Turner v. Brown, 82 Mo. App. 30.]

In the next place, the language of the contract shows it was a loan and not a sale, and accords with

Cox's testimony that the original agreement was for 15,000 shares instead of 20,000. The letter to Becker from Gaume says he will find 20,000 shares "in the place of 15,000 shares. I made Cox *put it all up to secure the loan* of $100." There is nothing said about any present transfer of the title nor indeed of any transfer. It is spoken of as being put up to secure a loan of $100 for fifteen days, at which time it, together with $10 *as interest,* would be due. And Cox's acceptance reads: "I accept the above *contract for the loan* of $100."

Furthermore, the evidence shows that such was the intention of the parties. Not only does the contract show the transaction to be a loan with the stock pledged as security, but the evidence shows that it was a loan and not a sale Cox was seeking. As said by ELLISON, J., in Bender v. Markle, 37 Mo. App. l. c. 246; "The character of such transaction is ascertained by learning the intention of the parties, and is fixed at its inception and is not changed by lapse of time." Defendant seems to think that because there is no express promise in the contract on Cox's part to repay the $100, this prevents, or aids in preventing, it from being a pledge. But the law imposes the duty upon Cox to repay and hence there does not have to be an express promise on his part to that effect in order to create the relation of debtor and creditor between them the moment the contract went into effect and the money was paid over to Cox. It is not necessary that the duty to repay should be evidenced by a bond, covenant note or other security. [Brant v. Robertson, 16 Mo. 129, l. c. 143.] This case also holds that, in order to determine whether a transaction was a conditional sale or a mortgage, the courts will not only look to the writings but to all the circumstances of the contract.

In Bobb v. Wolff, 148 Mo. 335, l. c. 344, the Supreme Court lays down one prime test and several sub-

ordinate tests by which it may be determined whether
a transaction is an absolute conveyance or a mort-
gage. The prime test is the "continued existence of
a debt." The subordinate tests are: 1. The collateral
agreement to pay money, which we say in this case the
law implies from the fact that Cox obtained the money
as a loan. 2. Grantor's liability to pay interest. 3.
An application for a loan pending the transaction. 4.
Was the conveyance, when executed, intended as a
security for a debt? And as to the existence of
the debt, it does not have to exist prior to the
transaction, but if it arises from a loan made at the
time of the conveyance evidenced by an agreement not
discharged or settled by the conveyance, the transac-
tion is a mortgage. [Book v. Beasly, 138 Mo. 455, l.
c. 461.] The opinion in Sheppard v. Wagner, 240 Mo.
409, l. c. 433, quotes the Bobb case with approval with
the addition that the debt may be one to be created or
arise in the future.

In Cobb v. Day, 106 Mo. 278, l. c. 295, it is said
that where the parties originally meet upon the foot-
ing of borrower and lender, the transaction will be
considered a mortgage and will continue to be such
unless the evidence shows the parties afterwards con-
tracted for an absolute sale of the property without
reference to the loan.

We are of the opinion that not only the contract
itself but also the transaction between the parties
show that it was a pledge of stock and bring it within
the tests above laid down. The testimony of both Cox
and Becker shows that the transaction had its incep-
tion in a loan. Becker testified that the amount of the
loan was $100; that it was to be due in fifteen days
after the money was lent; that it "did not constitute
a loan directly to Dana B. Cox but to Mr. Cox through
a man named Gaume;" and that he received as secur-
ity for this loan the 20,000 shares to secure the pay-
ment of the $100. In his pleaded answer, he says he

"was compelled to and did look only to said stock for the security of his money." The testimony of both Cox and Becker also shows that no legal title passed to Becker at the time of the execution of the contract. Becker says himself that the sale of the stock to him did not arise until after the expiration of the fifteen days and then only in case Cox failed to pay the $110. An important distinction between a pledge and a conditional sale is that in the former, the legal title remains in the pledgor, while in the latter, such title passes to the vendee with a right reserved in the vendor to repurchase at a fixed price and at a specified time. [31 Cyc. 789; Lucketts v. Townsend, 49 Am. Dec. 723.] There were no words in the contract between the parties granting or passing title; and 5000 shares more than the number originally agreed upon were "*put up*" with Becker. It would seem that any idea of a sale is overcome by all these facts and circumstances.

The transaction being a pledge, Cox's right to the stock remains until there has been a sale or foreclosure of the stock. But this, it is conceded, was never done.

The defendant's claim of conditional sale is based solely upon the clause in the contract which provided that if Cox did not repay the $100 plus $10 interest on or before fifteen days from date, "he agrees to forfeit all his right, title and interest to the same." But such a clause does not constitute a sale. And a contract which is a pledge in the beginning continues a pledge until the debt is paid or the right of redemption is foreclosed. The right of redemption is a part of the contract of pledge and the parties cannot *therein* make any valid agreement that there shall be no redemption after default. For a valuable consideration and by a subsequent agreement, the right of redemption may be released. But such cannot be made a part of the original agreement. [Jones on Pledges and Coll. Securities (2 Ed.), sec. 553.] And the agreement

in the original contract of pledge that the pledgor shall forfeit the property pledged upon failure to pay the debt at the time specified will not be enforced. [Jones on Pledges and Coll. Securities (2d Ed.), sec. 554. See, also, Lucketts v. Townsend, supra; Smith v. 49 and 56 Quartz Mining Co., 14 Cal. 242; Wilson v. Drumrite, 21 Mo. 325; Reilly v. Cullen, 159 Mo. 322, l. c. 331; Sheppard v. Wagner, 240 Mo. 409, l. c. 440, 441.]

It is urged that plaintiff's case is fatally defective because the petition contains no offer to redeem or tender of the debt due. (It may be observed here that Cox testified that at the end of the fifteen days he got a short extension of time by the payment of $5 and at the end of the extension he offered Becker he amount due him but that Becker refused to accept it. It is also in evidence that the plaintiff, through his attorney, tendered Becker the amount due before this suit was brought, but this was also refused). The contract shows on its face that $10 interest was contracted for and exacted for the loan of $100 for fifteen days. This is concededly usurious if the transaction was a loan. The transaction being, as we have seen, a pledge for a loan, what is the effect of such usurious exaction? Section 7184, Revised Statutes 1909, provides that in actions to secure possession of property pledged to secure indebtedness "or in any other case where the validity of such lien is drawn in question, proof upon the trial that the party holding or claiming to hold such lien has received or exacted usurious interest for such indebtedness shall render any mortgage or pledge of personal property, or any lien whatsoever thereon given to secure such indebtedness, invalid and illegal."

By force of this statute, the *pledge* of the stock is, void. The pledgee has no lien upon the property covered by the void pledge and is not entitled to the possession of the stock. The right of possession is in the owner without the condition of paying the

amount borrowed. [Hilgert v. Levin, 72 Mo. App. 48; Holmes v. Schmeltz, 161 Mo. App. 470; Henderson v. Tolman, 130 Mo. App. 498.] This question of usury can be raised by the plaintiff, assignee of Cox, the same as Cox could raise it. [Keim v. Vette, 167 Mo. 389; Osborn v. Payne, 111 Mo. App. 29.] The same reasoning applies with equal force to the point that plaintiff must do or offer to do equity before he is entitled to any relief in this case, and that as plaintiff has not offered to do this in his petition his action must fail. But, to require this of plaintiff is, in effect to ignore and override section 7184. [Lyons v. Smith, 111 Mo. App. 272; Henderson v. Tolman, supra; Holmes v. Schmeltz, supra; Hilgert v. Levin, 72 Mo. App. 48, l. c. 51.]

It is next urged that plaintiff, having filed two actions against defendant for conversion of the stock before bringing this suit, elected to consider the stock converted by Becker, and is now bound by such election and cannot sue for the stock itself. These suits were filed but were dismissed without prejudice before any final action therein was reached and before trial thereof. The evidence is that up to the time of the bringing of these two suits, the defendant Becker claimed the stock was not in his possession, he saying he had sold the same. Shortly before the bringing of the equity suit now before us, the plaintiff learned, through the taking of defendant Becker's deposition, that he had not sold the stock but was still the owner thereof but had caused it to be transferred upon the books to his own name. Thereupon, the suits in conversion were dismissed and this suit in equity brought. The bringing of the suits which were dismissed before trial is not such an election as will prevent the plaintiff from bringing the present suit to recover the stock itself. [Steimbach v. Murphy, 143 Mo. App. 537; Otto v. Yound, 227 Mo. 193, l. c. 219; Johnson, etc., Com. Co. v. Missouri. etc, R. Co., 1266 Mo. 344.]

The point that plaintiff has been guilty of laches cannot be allowed to prevail. The defendant had it in his power at any time to have foreclosed the pledge but never did so. He is the one who failed to act. The transaction originated as a pledge and the doctrine of "once a mortgage always a mortgage" applies. The pledgee held the property subject to the right of redemption until this right has been extinguished by a lawful sale of the pledged property. [31 Cyc. 858.] The transaction being a pledge, it remained such until properly foreclosed or otherwise adjusted by an agreement of the parties. [Sheppard v. Wagner, 240 Mo. 409, l. c. 441; Turner v. Brown, 82 Mo. App. 30; Reilly v. Cullen 159 Mo. 322, l. c. 331.] Cox's attempts to regain his property and his position that he had been "skinned out of it" does not show an acquiescence in defendant's action nor did Cox lead defendant into acting as he did.

Nor can we uphold defendant's point that there is no jurisdiction in equity because plaintiff has an adequate remedy at law. The evidence shows that defendant Becker, without any proceeding or sale to foreclose, surrendered the certificates of stock to the company and had new certificates issued in his own name. If defendant had retained the original shares plaintiff could have maintained an action at law for them. But since Becker had them transferred to himself, and they now stand in his name as owner, equity alone can order a redelivery. [Bryson v. Rayner, 25 Md. 337; Hagan v. Continental National Bank, 182 Mo. 319, l. c. 337; Jones on Pledges and Coll. Securities (2 Ed.), sec. 558.]

Plaintiff proved a written assignment from Cox in due and regular form. There was no evidence to show title was in anyone else. A demurrer could not have been sustained on the ground that plaintiff was not the real party in interest.

Numerous complaints are made concerning the refusal of the chancellor to admit evidence. The evidence offered and refused is set out in the record. We have considered it and the many assignments of error in regard thereto. In our opinion the admission of the testimony excluded could not have changed the result even if it had been material and admissible. The transaction being a pledge and not a conditional sale and the pledge being void under the statute because of the taint of usury, the defendant cannot withhold the stock. The decree of the chancellor is correct and should be affirmed. It is so ordered. The other judges concur.