WILLIAM N. WAUGH and MARY WAUGH v. FRANK B. WILLIAMS, Appellant.—119 S. W. (2d) 223.

Division Two, August 17, 1938.

*Farrington & Curtis, Neale & Newman* and *Wm. R. Collinson* for appellant.

*E. P. Mann* and *Mann, Mann & Miller* for respondents.

TIPTON, J.—In the Circuit Court of Greene County, Missouri, respondents brought this action to compel appellant to pay the balance of the purchase price of the Keystone Hotel which he had contracted to buy from them and to establish a lien against this property for the unpaid portion of the purchase price.. The trial court entered a judgment against appellant in the sum of $7736, but did not enforce the lien.

On October 22, 1932, respondents entered into a written contract with appellant, by the terms of which they sold the Keystone Hotel, located in Springfield, Missouri, including both real and personal property, to appellant for the sum of $9500. The contract provided that $5000 be paid in cash, the balance to be expressed in a note bearing six per cent per annum interest and secured by a second deed of trust. The contract recites that the sale was subject to a first deed of trust to secure a note of $16,000, upon which $1000 would be due February 4, 1934, $1000 due February 4, 1935, $1000 due February 4, 1936, and the balance due February 4, 1937. Respondents agreed to pay all interest on the $16,000 note up to February 4, 1933. Appellant was to pay all State and county taxes. Respondents were to transfer all insurance, with the premiums paid, to appellant.

The contract further recites that appellant paid $200 on the date the contract was executed and was to pay $4800 in cash within thirty, days. It also provided that he was to have possession of all the property on November 1, 1932. The evidence shows that he did take possession on that date and never thereafter surrendered it. By the terms of the contract, respondents were to make, execute and deliver to appellant a good and sufficient deed to the real estate, subject to the first deed of trust and taxes, when the cash payment was completed, and make a bill of sale for the personal property. The contract provided that respondents should have a lien upon all the property until the cash payment provided for was completed and until the second deed of trust was executed and delivered.

When the $4800 became due, respondent W. N. Waugh went to appellant and spoke to him about closing the contract, to which appellant replied that he did not have the money but was trying to get it. However, on December 19, 1932, appellant paid respondents $900 and on February 15, 1933, he paid them $50 on the contract. At the time of each payment he stated that that was all he could pay. The mat-

ter ran along until March 13, 1933, when appellant paid the holder of the first mortgage note $462.72, being the installment of interest; and also paid $266.42 premiums due on the insurance policies. Both of these items were to have been paid by respondents according to the terms of the contract; however, respondents did give appellant credit for them. There remained another installment of interest of $430 which respondents had agreed to pay but they gave appellant credit for this sum on March 13, 1933. At various times thereafter respondents made demands for payment of money due under the contract but were always told by appellant that he could not raise the money.

On August 26, 1933, respondents instituted an ejectment action against appellant and his tenants, but respondents' motion for the appointment of a receiver was by the court overruled. Thereafter, this action was dismissed without having been heard on its merits. On October 19, 1933, respondents filed a similar action in ejectment and for rents and profits against appellant. Again their application for a receiver was denied. This action in ejectment was also dismissed by respondents without ever having been tried on its merits.

Default in the payment of one installment of interest which should have been paid by respondents having accrued, and also default in other interest installments and on one of the notes for $1000 having accrued, the holder of the notes secured by the first deed of trust foreclosed on the real estate in question on August 15, 1934, and it was bought by the holder of the indebtedness. Appellant gave notice and bond, and complied with the other requirements of the law entitling him to redeem within one year.

This action was commenced December 21, 1934, and tried July 24, 1935. Judgment was rendered December 21, 1935. Other pertinent facts will be stated in the course of this opinion.

█ Appellant contends that the petition wholly fails to state a cause of action because there is no allegation in it that respondents had tendered a deed to him and demanded performance by him. The petition does allege that "plaintiffs state they have always been ready and willing and are now ready and willing to execute and deliver to defendant the deed provided for in said contract upon defendants' compliance with the terms thereof. . . ."

We believe this contention to be without merit. While the petition does not allege an actual tender of the deed to appellant, yet it does allege an offer of a tender. In other words, the petition alleges a willingness to execute the deed upon compliance with the terms of the contract by appellant. While the rule is different in other jurisdictions, this is sufficient allegation in this State. [Lumley v. Robinson, 26 Mo. 364; Pomeroy v. Fullerton, 113 Mo. 440, 21 S. W.

19; Lanyon v. Chesney, 186 Mo. 540, 85 S. W. 568; Powell v. Hunter, 204 Mo. 393, 102 S. W. 1020; Davis v. Watson, 89 Mo. App. 15.]

■ Appellant contends that respondents cannot maintain this action because they had previously filed two ejectment suits in which they had asked for the appointment of a receiver, thereby electing to rescind the contract, while in the case at bar they are trying to enforce the contract. Therefore, for this reason, he contends they are estopped to bring this action.

It is well settled in this State that the doctrine of election of remedies is based upon the principles of estoppel. If the first action brought is dismissed prior to being determined upon its merits, then there is no estoppel by record, but if the defendant has received legal detriment from the change in the form of action, there is an estoppel *in pais,* and plaintiff is precluded by the defense of election of remedies, even though the first suit was dismissed before final judgment. [Anchor Milling Co. v. Walsh, 20 Mo. App. 107; Johnson-Brinkman Comm. Co. v. Mo. Pac. Ry. Co., 126 Mo. 344, 28 S. W. 870; Hargadine-McKittrick Dry Goods Co. v. Warden, 151 Mo. 578, 52 S. W. 593; Otto v. Young, 227 Mo. 193, 127 S. W. 9; Cowan v. Young, 282 Mo. 36, 220 S. W. 869; Smith v. Becker, 192 Mo. App. 597, 184 S. W. 943.] If a party brings suit to rescind a contract and dismisses it before final judgment, he then may bring suit to enforce the contract. Under our decisions he is not limited in the second action to some form of action disaffirming the contract. In other words, we recognize no such doctrine on election of substantive rights. In the case of Johnson-Brinkman Comm. Co. v. Mo. Pac. Ry. Co., supra, the plaintiff first brought a suit in attachment which was dismissed, after which he brought a suit in replevin. We held that he had a right to enforce the replevin action, which disaffirmed the contract, even though he had first brought an attachment suit which affirmed the contract. He was not limited in his second action to some remedy consistent with his affirmance of the contract.

■ So, when respondents dismissed the two ejectment suits there was no estoppel by record because these actions were not determined on their merits. The asking for the appointment of a receiver did not determine any merits of those litigations; it was only ancillary to the main case. Nor do we think that filing the two ejectment suits came within the rule of estoppel *in pais,* as distinguished from estoppel by record.

"To constitute estoppel *in pais,* three things must occur: First, an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement, or act; and, third, injury to such other party, resulting from allowing the first party to contradict or re-

pudiate such admission, statement, or act." [State ex inf. Shartel, Atty. Gen., v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394, l. c. 399.]

█ Appellant contends that because respondents brought the two ejectment suits, he relied upon the fact that they were trying to rescind the contract and, consequently, let the property in question be foreclosed. If the record sustained such contention, then we would be inclined to agree with appellant, but the evidence does not sustain this conclusion. It is true appellant testified that he offered to surrender the property to respondents on condition that he be reimbursed for what he had paid to respondents, to the insurance company, for taxes, and for improvements that he had placed upon the property. If appellant had offered to rescind the contract he could not have done so on such terms. He would have had to account to respondents for fair rental value of the property for the time he had possession. [Wright v. Lewis, 323 Mo. 404, 19 S. W. (2d) 287.] He also testified that he resisted the two ejectment suits and that he was anxious to pay all he had promised to pay on the property.

█ While the second ejectment suit was pending appellant paid respondents $150 on March 16, 1934, and $100 on April 26, 1934. If he were relying on the fact that respondents were trying to rescind the contract, why did he still make payments under the contract? We think a fair analysis of the evidence is that the reason appellant let the property be foreclosed was that he was unable to raise the money to meet the payments due, and not that he relied upon the fact that an ejectment suit was pending. On the date the property was foreclosed, appellant gave notice and bond and complied with other requirements of the statute which would entitle him to redeem within one year. His only right to redeem would be by virtue of the contract. At that time the second ejectment suit had been dismissed, so he was still claiming under the contract and had not relied upon the fact that respondents had tried to rescind the contract by bringing the ejectment suits.

"An equitable estoppel cannot arise unless justice to the rights of others demands; its office being not to work a positive gain to a party, but to protect him from a loss which he could not otherwise escape, and hence should be limited to what is necessary to put the parties in the same relative position they would have occupied if the predicate of the estoppel had never existed." [State ex inf. Shartel v. Missouri Utilities Co., supra, l. c. 401.] We hold that as appellant's position was not changed by the institution of the ejectment suit, he cannot rely upon the defense of estoppel.

█ Appellant next contends that respondents were not entitled

to specific performance of the contract because they were unable to perform their part of the contract at the time they instituted this suit and at the time of the decree. Appellant went into possession of the property at the time of the signing of the contract and was in possession at the time of the trial of this cause. He became the equitable owner of the land covered by the contract; respondents retained the legal title as security for the unpaid purchase money. [Beckmann v. Beckmann, 58 S. W. (2d) 490.] Respondents did not tender a deed to this property until the trial. At that time, the property had been foreclosed under a first deed of trust, and it is appellant's position that respondents had lost their title to the land and for that reason cannot maintain this action. Under these circumstances, is appellant in any position to question respondents' title?

In the case of Wright v. Lewis, supra, l. c. 410, we said:

"As affecting the rights of the parties in an action of this kind, it is immaterial whether the initial default in the performance of the contract of sale rests with the one or the other. The principle is that the vendee cannot retain possession of the land and at the same time refuse to pay the purchase money. In Worley v. Nethercott, 91 Cal. 512, it was held:

" 'A purchaser of land in possession thereof under a contract of sale, by the terms of which the vendor is to give a warranty deed of the property, conveying a good and perfect title thereto, cannot, upon the vendor's failure and inability to convey a good and perfect title, retain both the land and the purchase money until a perfect title shall be offered him, but he must pay the purchase price according to the contract, and receive such title as the vendor is able to give, if he chooses to retain the possession of the land, or he may rescind the contract, restore the possession to the vendor, and recover the purchase money paid, together with the value of his improvements, after deducting thereform the fair rental value of the premises; and if he fails and refuses to adopt either course, he is liable to an action of ejectment by the vendor.'

"Of like tenor are the decisions of this court. [Smith v. Busby, 15 Mo. 387, l. c. 393; Gibbs v. Sullens, 48 Mo. 237; Fulkerson v. Brownlee, 69 Mo. 371; Rose v. Perkins, 98 Mo. 253, l. c. 258, 11 S. W. 622; DeBernardi v. McElroy, 110 Mo. 650, 19 S. W. 626; Heller v. Jentzsch, 303 Mo. 440, l. c. 449, 260 S. W. 979.].

"Appellants assert that they are ready and willing to perform the contract on their part, if, and when, respondent perfects her title and tenders them a proper deed of conveyance. In the meantime they retain both possession and the purchase money. The equitable title

of the vendee under a contract of sale arises, if at all, through performance, or an unconditional tender of performance, on his part."

On authority of the above-quoted case, and the authorities cited therein, we hold that appellant is estopped to question respondents' title to the property in question.

Appellant's last contention is that the decree is erroneous because it required of him a more onerous performance than that contracted, and that the decree made a new contract for the parties in that it compelled him to pay the balance of the cash payment and the note, a total of $7736, at once instead of allowing him three years to pay the $4500 note. We agree with appellant that a court of equity cannot make a contract for the parties, but at the time the decree was entered the $4500 note was due under the contract, therefore, respondents would not have been given a complete remedy. "The doctrine is too well settled to admit of either discussion or dispute, that when a court of equity once acquires jurisdiction of a cause it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties. It will not content itself in this regard by any halfway measures; it will not declare that a party has been defrauded of his rights and then dismiss him with a bland permission to assert, at new cost and further delay, those rights in another form." [Real Estate Sav. Inst. v. Collonious, 63 Mo. 290, l. c. 295. See, also, Munford v. Sheldon, 320 Mo. 1077, 9 S. W. (2d) 907; Rains v. Moulder, 338 Mo. 275, 90 S. W. (2d) 81.] It certainly would be a halfway measure to decree that appellant execute a past due note to respondents for $4500, leaving respondents the burden of suing appellant to collect that note.

It follows from what we have said that the judgment should be affirmed. It is so ordered. All concur.