## ROSE et al., Appellants, v. PERKINS

1. **Executory Contract for Purchase of Land: DEFAULT: EJECTMENT.** One who purchases land, giving his note for the purchase money and receiving the obligation of his vendor to make him a deed upon the payment of the money, occupies the position of a vendee under an executory contract, and upon default he is liable to be turned out by ejectment.

2. ——: ——: ——: JUDGMENT. In such case, where, after the death of the vendor, ejectment is brought by his widow and heirs, a judgment in their favor for a balance of the purchase price is erroneous, the personal representative alone being authorized to recover such a judgment

*Appeal from Greene Circuit Court.*—Hon. W. F. Geiger, Judge.

Reversed and remanded.

*Massey & McAfee* for appellants.

By the answer and replication, this suit was converted into an equitable proceeding for the specific performance of a contract for the conveyance of the real estate in controversy. Green-Myers Mo. Pleading and Practice, sec. 153. If the defendant asks for the enforcement of the title-bond contract, he must tender performance on his part. *Delassus v. Poston*, 19 Mo. 425; *O'Fallon v. Kennedy*, 45 Mo. 129; *Deichmann v. Deichmann*, 49 Mo. 109. If of the verbal contract alleged, that contract must be established by competent proof, be clear, definite and unequivocal in its terms, and must have been fully performed on part of defendant or performance tendered. *Underwood v. Underwood*, 48 Mo. 527; *Paris v. Haley*, 61 Mo. 454; Waterman on Specific Performance, sec. 291; *Sitton v. Shipp*, 66 Mo. 297; *Louthan v. Stillwell*, 73 Mo. 493; *Shropshire v. Brown*, 45 Ga. 175. The alleged verbal contract is within the statute of frauds and defendant has shown no such performance on his part, complete or partial, as demands the interference of equity in his behalf. Same authorities, and Waterman on Specific Performance, sections 262, 268, 269 and 270. The court can enforce only the contract proven to have been made, none other. Waterman on Specific Performance, secs. 389 and 390. *Whiteaker v. Vanschoiack*, 5 Ore. 113; *Riesz's Appeal*, 73 Penn. Stat. 485.

*Price & Kersey* for respondent.

Brace, J.—This was an action of ejectment for forty acres of land in Greene county, commenced April 7, 1884.

by plaintiffs, the widow and heirs-at-law of Reuben A. M. Rose, deceased. The defendant died after the case was appealed and his heirs and representatives have been made parties defendant. The petition was in the usual form. The defendant in his answer denied none of the allegations of the petition, but, in substance, set up the following facts: That in the year 1871, he and one Dollison being indebted in the sum of $1766, each severally conveyed their lands to Reuben A. M. Rose, the ancestor of the plaintiffs, by deeds absolute on their face, upon an agreement, however, that said Rose was to pay off said indebtedness and said deeds were to operate only as a mortgage to secure him; that the land sued for was the land conveyed by defendant; that said Rose, having paid said indebtedness, possession thereof was delivered to him; that afterwards, on the thirteenth of February, 1875, the deceased executed and delivered to defendant and Dollison a written obligation in which he bound himself in the sum of seventeen hundred and sixteen dollars, upon the payment of that sum according to the tenor of their notes, to make them a deed to the lands therein described, which description included the land in suit; that in the begining of the year 1880, it was agreed between defendant and said Rose, that the amount of defendant's indebtedness to him on account of the transaction aforesaid was three hundred dollars and he should pay that amount in discharge thereof, at such time as he could conveniently do so; that thereupon defendant, by the consent of said Rose, took possession of the land under said agreement and now holds the same by reason thereof; that shortly after said agreement was made, he paid said Rose fifty dollars, and was' preparing to pay him the remainder of said three hundred dollars when he died. And prayed the court to make such orders in the premises in reference to the payment of the balance due said Rose at his death as to the court shall seem just, and that title be decreed to defendant upon such payment.

All the facts set up in the answer were denied in the reply. The case was tried before the court, and a decree rendered "that all the right, title and interest in said land in said R. A. M. Rose at the time of his death be vested in said Perkins from and after the death of said R. A. M. Rose, deceased. And it is further ordered, adjudged and decreed that said plaintiffs, as such heirs and widow of said R. A. M. Rose, deceased, have and recover of and from said defendant two hundred and fifty dollars, balance of such purchase price of said land and the further sum of ninety-seven and seventy-five hundredths dollars interest thereon, and that the same be charged on said land, and that plaintiffs have execution therefor and costs of suit, and also that this judgment bear ten per cent. interest till paid."

The obligation filed with the answer contains no description of the notes therein referred to. It appears from the evidence introduced by the defendant in support of this answer, that in October, 1879, Rose sold the land described in the obligation, other than the land in controversy, being the land conveyed to him by Dollison, for sixteen hundred dollars; that he died on the twelfth of March, 1881, at a place called The Mill; that at that time no one was living on the premises in controversy; that Perkins was then a tenant of Rose, and living at his home place; that in the following May, Rose's widow moved to the home place, and Perkins moved to the premises in controversy, on which, prior to the fall of 1880, a man by the name of Clark had been living as the tenant of Rose. There was no evidence to warrant a finding that the absolute deed made by the defendant was intended by the parties as a mortgage, whatever the character of the original transaction may have been and there is no evidence bearing directly upon it. The parties themselves have placed themselves, by their own written agreement, upon a different footing; the one by executing his note for the money upon the payment of

which he was to have a deed to the land, and the other by his obligation to make him a general warranty deed therefor upon the payment of the money evidenced by the note. Upon this footing they must stand, and upon it the court based its decree.

The position of the defendant is that of a vendee under an executory contract, the conditions of which he has failed to perform. There is not a particle of testimony that the amount due from Perkins to Rose was by agreement fixed at three hundred dollars, or that Rose agreed to await his convenience for the payment of that amount. His repeated declarations given in evidence by the defendant were to the effect that he was willing to let Perkins have his land back or to make him a deed upon payment of what was due him. The only evidence of any agreement between them as to amounts was that they at one time agreed that the amount Perkins had paid upon the land was about fifty dollars. But conceding that such was the agreement the position of the defendant is in no way bettered. Such an agreement could only have given him a reasonable time in which to pay, and when this suit was begun, more than four years had elapsed since the agreement was made, his creditor had died, and the time had elapsed within which his estate ought to have been wound up and distributed, and yet he did not pay or offer to pay. The death of a creditor would mature such a debt, certainly within two years thereafter, as the extreme limit of a reasonable time.

As there was no evidence of any such agreement, of course defendant did not go into possession under it. The casual remarks of deceased about the tenant, the wheat that was raised on the place and his intention to make a deed, must all be read in the light of his reiterated expression that all he wanted was his money, and of the preparation that defendant says he was making to pay it before and at the time of his death, and

are all reasonably referable to a condition of things contemplated by the deceased when the payment should have been made. The fact remains that defendant did not pay, and did not go into possession until after Rose's death, and so far as the evidence shows, *then* without anybody's consent.

Upon any foot that this case can be placed, it is not seen how the plaintiffs' action could be defeated on the plea and evidence in the case. "Where a party goes into possession under a contract of purchase, and makes default, he is liable to be turned out by an ejectment." *Gibbs v. Sullens*, 48 Mo. 237; *Fulkerson v. Brownlee*, 69 Mo. 371. "A mortgagee, in the absence of an agreement to the contrary, may maintain ejectment for the mortgaged premises, after breach of the conditions." *Siemers v. Schrader*, 88 Mo. 20. For three years before this suit was brought, the law afforded the defendant a tribunal and a speedy remedy on his title bond by which he could have obtained the legal title upon the payment of the balance due Rose. R. S. 1879, sec. 173 *et seq*. Or, if he chose to treat the deed and bond as a mortgage, he could have paid the personal representatives the balance due. In the latter case, he would have had a standing in a court of equity that would have authorized a decree of title. In the former, he would not have needed its assistance. The defendant has no one but himself to blame, on his own statement, if his possession is disturbed. He had but one thing to do, and that was to pay. That thing he didn't do, doesn't offer to do in this case, couldn't have done if he was ever so willing and had brought the money into court for that purpose as there was no party to the suit whom the court could authorize to receive it. No one that had any right to it. For it goes without saying that the judgment of the circuit court in favor of the widow and heirs of Rose for the amount which it found to be due as the balance of the purchase money on the land was

*coram non judice.* The personal representatives could alone recover such a judgment. The decree and judgment rendered by the circuit court can't stand. The defendant failed to show himself entitled to any equitable relief, and the plaintiffs ought to have recovered on their legal title.

The judgment is reversed and the cause remanded. All concur, except Sherwood, J., absent, and Barclay, J., in the result.