WILLIAM HELLER v. AUGUST JENTZSCH,
Appellant.

AUGUST JENTZSCH, Appellant, v. WILLIAM
HELLER et al.

Division Two, April 7, 1924.

1. **SPECIFIC PERFORMANCE: Oral Contract: Part Payment.** If the parties orally agreed upon the terms of sale, and the vendor put the vendee in possession of the land in pursuance to the agreement, the vendee at the same time paying a part of the agreed purchase price, those things, nothing further appearing, take the transaction out of the operation of the Statute of Frauds, and entitle the vendee to specific performance.

2. ———: ———: **Terms: Character of Proof.** To authorize a decree compelling the specific performance of a contract to sell land, the agreement must be clear and unequivocal in its terms; and

where the contract was oral the evidence to prove its terms must be clear, cogent and convincing, so as to leave no reasonable doubt that the contract in the terms alleged was agreed upon. Where the defendant was the sole owner of three tracts and an undivided interest, with his four brothers and sisters, in a fourth tract, and the petition alleges and the plaintiff testifies that defendant orally agreed to convey his interest in the three tracts and the entire interest of himself and of his brothers and sisters in the fourth tract, and defendant testifies that the agreement was that he was to convey only his own interest in the four tracts, and the preponderance of the evidence was against plaintiff's version of the contract, specific performance cannot be decreed.

3. **UNLAWFUL DETAINER:** Injunction: Adequate Defense at Law. Whatever may be the merits of an action of unlawful detainer, the defendant has an adequate remedy at law in defending it, and is not entitled to an injunction to enjoin its prosecution.

4. ———: Finding By Trial Court. The trial court, sitting as a jury in an unlawful detainer suit and rendering judgment for plaintiff, must be presumed to have found every fact warranted by the evidence and necessary to sustain its judgment for plaintiff. Whatever version of the arrangement between the plaintiff and defendant by which the defendant went into possession that would support the judgment, is presumed to have been found as a fact by the trial court.

5. ———: Misunderstanding: Right to Possession: Tenant at Will. Where the plaintiff agreed to sell the land, and upon payment of one hundred dollars of the purchase price, put defendant into possession, and the contract of sale was so indefinite in terms that it cannot be enforced, and they so misunderstood each other that their minds never met on its terms, then the defendant went into and remained in possession through mutual mistake, which is not inconsistent with good faith, but he remained in possession under a void contract, and therefore as a tenant at will, and the relation of landlord and tenant is implied. If there was a total misunderstanding, the interest of the defendant, after discovery of the misunderstanding, was "created by livery and seizin only" under the statute (Sec. 2167, R. S. 1919), and he was likewise a tenant at will, or if not that a tenant at sufferance only. In neither case is he entitled to retain possession indefinitely.

6. ———: Tenant at Will: Notice: Contractual Relation: Repudiation. A tenancy at will of farm lands is construed to be a tenancy from year to year, and if the tenant chooses to continue the relation sixty days' notice to quit is required; but one in possession, whether as tenant or vendee, under an executory contract of pur-

chase or otherwise, who repudiates his contract or denies the title of the true owner, thereby determines the prior relationship, and waives his preliminary right to notice to quit; and if there is no contractual relation, or the defendant in possession denies that he holds in subordination to plaintiff, there is nothing to terminate, and in either case defendant is not entitled to notice, and the plaintiff, upon written demand, is entitled under the statute (Sec. 2995, R. S. 1919) to maintain an action of unlawful detainer.

Headnotes 1 and 2: **Specific Performance,** 36 Cyc. 654, 588, 689. Headnote 3: **Injunctions,** 32 Cyc. 96, 98. Headnote 4: **Appeal and Error,** 4 C. J. sec. 2728. Headnotes 5 and 6: **Landlord and Tenant,** 35 C. J. secs. 353, 355, 370, 374, 36 C. J. sec. 1837.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing*, Judge.

AFFIRMED.

*F. W. Imsiepen* and *Geo. F. Osiek* for appellant.

(1) There was an executed contract between appellant, Jentzsch, and respondent, William Heller. Sooy v. Winter, 175 S. W. 133; Hubard v. Slavens, 218 Mo. 620; Kirk v. Hamilton, 102 U. S. 68, 77; Halloway v. Jones, 246 S. W. 591. (2) Equity will not permit the Statutes of Frauds to be made an instrument of deception and fraud; therefore it has enforced oral contracts made in disregard of the statutes. Signaigo v. Signaigo, 205 S. W. 23; Kirk v. Hamilton, 102 U. S. 68, 77. (3) Upon an agreement for the sale of lands, in absence of special stipulations to the contrary, the vendor is to be considered as contracting for a general warranty deed. McGinnis v. Broderick, 192 S. W. 420; Harryford v. Turner, 77 Mo. 296. (4) The action of unlawful detainer can be maintained only where the relation of landlord and tenant subsists between the parties to the action, and hence it becomes material to determine whether the parties stand in that relation to each other. Whiteside v. Oasis Club, 162 Mo. App. 502; Andrae v. Heinvitz, 19 Mo. 311; 2 Taylor on Landlord and Tenant (9 Ed.) sec. 717; Williams v. Treece, 184 Mo. App. 135; Aubuchon v. Foster, 202 Mo. App. 225. (5) Vendor may be enjoined by

vendee from bringing unlawful detainer proceedings.
Orr v. McCudy, 34 Mo. App. 418; Miller v. Harper, 63 Mo.
App. 293. (6) The notice to "quit forthwith" and sur-
render his standing crops to the landlord "forthwith,"
as made, dated and served, was void and without effect
under Sec. 2995, R. S. 1919; said notice failed to give the
required sixty days' notice. Preceiving Co. v. Miller,
124 Mo. App. 384; Kroeger v. Bohrer, 116 Mo. App. 211.
(7) Unless the relation of landlord and tenant exists, no
recovery can be had for rents for use and occupation.
State ex rel. Armour Packing Co. v. Dickman, 146 Mo.
App. 396.

*R. E. Kleinschmidt* and *P. S. Terry* for respondent.

(1) "Possession under an oral contract to convey
real estate without the payment of rent, creates a tenancy
at will." Williams v. Deriar, 31 Mo. 13, 18; Kelly's Jus-
tice Treatise (5 Ed.) p. 711, sec. 596; Hoover, Rhodes &
Co. v. Oil Co., 41 Mo. App. 317, 323. (2) "Tenancy at will
can be terminated by one month's notice in writing, which
was given in this case." Section 6880, R. S. 1919; Des-
loge v. Pearce & Willoughby, 38 Mo. 588. (3) "No ac-
tion shall be brought upon any contract made for the
sale of lands, tenements, hereditaments or any interest
in or concerning them unless the agreement upon which
the action shall be brought or some memorandum or no-
tice thereof shall be in writing and signed by the party
to be charged." Sec. 2169, R. S. 1919; Walker v. Bohan-
nan, 243 Mo. 119, 135; Hersman v. Hersman, 253 Mo. 175,
186; Byrant v. Stahl, 217 S. W. 32. (4) "To obviate these
frauds the exceptions to the statute here invoked was
adopted by courts of equity, but not without well-defined
rules of procedure." (a) The alleged oral contract must
be clear, explicit and definite; (b) it must be proved as
pleaded; (c) it cannot be established by conversations
either too ancient or too loose or casual; (d) it must be
fair and not unconscionable; (e) the proof must be such
as to leave no reasonable doubt in the mind of the chan-
cellor that the contract as pleaded was in fact made and

fully performed, as far as performance lay in the hands of the parties. Collins v. Herrel, 219 Mo. 279, 301; Forister v. Sullivan, 231 Mo. 345, 373; Oliver v. Johnson, 238 Mo. 359, 373. (5) Where in an equity case the evidence is conflicting, the chancellor who tried the case had a better opportunity than the appellate court has to judge of the reliance that ought to be placed in the testimony of each witness, and the appellate court defers to the findings of the trial judge. Huffman v. Huffman, 217 Mo. 182; Jones v. Thomas, 218 Mo. 508, 540; Walsh v. Trust Co., 148 Mo. App. 179.

WHITE, J.—Two cases tried together. William Heller brought suit against August Jentzsch in unlawful detainer to recover possession of a farm. Jentzsch then sued Heller and the other defendants in the second case, seeking specific performance of an oral contract to convey the farm, asking partition of a portion of the land, and a restraining order to enjoin the prosecution of the unlawful detainer suit.

The unlawful detainer suit was certified to the circuit court. The two cases were consolidated and tried together by the circuit court. Judgment was rendered for Heller in the unlawful detainer suit, awarding him possession of the premises; in the equity suit judgment was against Jentzsch and for the defendants.

The farm involved in the litigation consists of four parcels, designated as 1, 2, 3 and 4. The title to tracts 1, 2 and 3 was in William Heller. The title of tract 4 had been in Caroline Heller, deceased, the mother of William Heller, and John Heller, Emil Heller, Charles Heller and August Heller, the other defendants, her children. From the plats in the record it appears that tract 4 originally consisted of 1.27 acres. This later was increased by accretions until it comprised about 13¼ acres.

William Heller was in possession of all this land, and in 1919 began negotiations with Jentzsch to sell him the farm. Later Jentzsch was put in possession under an agreement to pay five thousand dollars for the land. He paid one hundred dollars down, but there was no

writing to show the character and terms of any contract of purchase. William Heller claimed at the trial, and claims here, that he sold only tracts 1, 2 and 3, to which he possessed the title, and whatever interest he had in tract 4.

The negotiations between the parties terminated July 27, 1919, when the hundred dollars was paid. In October of that year Jentzsch procured a certificate of title which showed that Heller had title to the first three tracts and only an undivided interest with his brothers and sisters in tract 4.

On March 2, 1920, Heller moved off and Jentzsch moved on. Jentzsch had previously sowed some of the land to wheat. There was talk between the parties regarding a deed, and the acquisition of title to tract 4 from Heller's relatives. It appears that in September an unsuccessful attempt was made to obtain from the brothers and sisters of William Heller a quitclaim deed to tract 4. In September, 1920, Heller's attorney tendered to Jentzsch a warranty deed from Heller conveying tracts 1, 2 and 3, and a quitclaim deed conveying tract 4, and demanded $4900, the balance of the purchase money. In October, 1920, Heller served notice and demand upon Jentzsch to quit the premises, and November 15th he brought his unlawful detainer suit which was certified to the circuit court. December 18, 1920, Jentzsch filed his bill in equity in the circuit court, and, as stated, the two cases were tried together.

There is no dispute between the parties as to the negotiations for the sale or the price to be paid, or that Jentzsch paid one hundred dollars, and was put in possession by Heller. A dispute arose only when it became necessary to conclude the arrangement by conveyance and by payment of the balance of the purchase money. Heller claimed that he was to sell only tracts 1, 2 and 3 and his interest in 4, and Jentzsch claimed that he bought it all, and that Heller was under obligations to make him title to tract 4, as well as to the others.

The bill in equity in addition to alleging the agreement to convey, alleges there was fraud perpetrated upon

Jentzsch by Heller misrepresenting the boundaries of the land.

In regard to this arrangement Jentzsch testified that the subject of the sale of the farm was broached during the threshing season in 1919. That perhaps two or three conversations took place between Heller and himself; that Heller showed him the lines of the farm, and from his evidence it may be gathered that those lines included all of tract 4, as well as the other tracts; that Heller told him he could give him clear title and that it was all clear, and that there were 157 or 158 acres in the tract. He further testified that when he got his certificate showing the state of the title, Heller told him it was all right, that the "boys would sign."

Heller testified that he had conversations with Jentzsch in relation to the sale at the times mentioned by Jentzsch, and that he told Jentzsch there were 130 or 136 acres in the land. He showed him the corners of the land he owned, and told him the truth about tract 4; that he thought the boys would sign a quitclaim deed to it, but he didn't know whether they would or not. When the dispute arose between them he refused to make a warranty deed to all the land, but tendered a warranty deed to tracts 1, 2 and 3, and a quitclaim deed to tract 4; Jentzsch refused to conclude the trade on that basis, and refused to pay the balance of the money. Heller tendered back the $100 paid by Jentzsch, and demanded the rent, and later brought suit for the possession.

The evidence showed that before Jentzsch went into possession there was talk with the other Hellers about procuring a quitclaim deed, and Jentzsch secured the certificate of title showing that William Jentzsch had only part interest in tract 4; that it was vested in him and his brothers and sisters. There was evidence showing a conversation in the presence of the county surveyor, when John Heller, brother of William Heller, and others, were present, in which William Heller said to Jentzsch that he had no deed to the land in the bottom, meaning tract 4. On this evidence the trial court found

all the issues in both suits in favor of Heller, as stated above.

I. In his equity suit Jentzsch seeks specific performance of an oral contract to convey, alleging part performance which he claims would take the case out of the operation of the Statute of Frauds. It may be conceded for the purpose of the argument that if the parties agreed upon the terms of a sale and William Heller put Jentzsch into possession in pursuance of the agreement, Jentzsch at the same time paying part of the purchase price, that would be sufficient to take the case out of the operation of the Statute of Frauds, and, nothing further appearing, Jentzsch would be entitled to specific performance.

*Specific Performance.*

II. There was direct conflict in the evidence offered by the parties as to the terms of the contract. No doubt there was an attempt by Heller to sell the farm to Jentzsch, and that both understood Jentzsch was taking possession under agreement to convey, but they disagreed entirely as to the terms of the sale. Jentzsch claimed that Heller was to convey and make him a good title to all four tracts, and bases his right to relief upon the establishment of the agreement. In order to make out his case it was necessary for him to prove his contract as pleaded in clear and certain terms. [Hersman v. Hersman, 253 Mo. 175, l. c. 186; Walker v. Bohannan, 243 Mo. 119, l. c. 136; Hubbard v. Hubbard, 140 Mo. 300.] Either the parties misunderstood each other at the time they agreed upon the sale, or one or the other of them at the time of the trial did not recollect the real terms of the agreement. The trial court found that Jentzsch did not prove the contract as he alleged it. If the evidence were evenly balanced and the case were one that required merely a preponderance of the evidence to establish the case, with the usual deference to the chancellor who tried it, we would feel constrained to hold with the trial court upon that issue. But this is a case where a verbal contract to convey must be proved clearly

*Proof.*

and unequivocally. The contract must not only be clear in its terms, as the appellant asserts them, but the evidence to prove it must be clear, cogent and convincing so as to leave no reasonable doubt that the contract in the terms alleged was agreed upon. If it be conceded that Jentzsch's version of the contract was clear enough to entitle him to recover, he didn't prove it as found by the trial court. As it appears in the record the preponderance of the evidence was against his version of the contract. He proved neither the fraud alleged nor the contract.

Jentzsch of course had no right to partition tract No. 4 unless he first established his contract of sale.

In addition to asking a specific performance he sought to enjoin the prosecution of the unlawful detainer suit. Whatever the merits of that case, he had an adequate remedy at law in defending it, and could not obtain relief in equity to enjoin the proceeding.

**Injunction.**

Therefore we affirm the judgment of the trial court in the equity suit.

III. In determining the unlawful detainer case we first must ascertain what was the relation of the parties under the circumstances: Jentzsch was given possession by Heller under the supposed agreement to sell. In finding that Jentzsch did not prove his contract, as alleged, the trial court did not necessarily find the contract was in the terms claimed by Heller. The trial court might have found that the minds of the parties did not meet on any contract, and Heller surrendered possession upon misunderstanding between the parties, or that Jentzsch wilfully misrepresented the terms of the contract after he had secured possession. The trial court must be presumed to have found every fact, and any fact, warranted by the evidence and necessary to sustain its judgment. Whatever version of the arrangement and situation would support the judgment for possession is presumed to have been found as a fact by the trial court.

**Unlawful Detainer.**

IV. If the parties misunderstood each other from the start and their minds never met upon the terms of the contract of sale, then Jentzsch was in pos-

**Mutual Mistake.** session through mutual mistake. That is consistent with good faith on the part of both parties. The talks which took place between Heller and Jentzsch were very indefinite; the record does not show clearly just what was done when Heller showed Jentzsch the lines; we cannot tell from a perusal of the record just what representations were made, even if Jentzsch remembered correctly where the lines of the land ran as shown to him. There seems to be ample room for misunderstanding between the parties.

There is no doubt that in that situation the vendor had a right to recover possession, in ejectment. [DeBernardi v. McElroy, 110 Mo. 650; Rose v. Perkins, 98 Mo. 253; Gibbs v. Sullens, 48 Mo. 237.] These are cases where a purchaser of land in possession refused to perform his contract by paying for the land.

If Jentzsch went into possession under parol agreement, understood alike by the parties, in the absence of part performance, the statute would fix the status. Section 2167, Revised Statutes 1919, is as follows:

"Sec. 2167. *Leases, not in writing, operate as estates at will.*—All leases, estates, interests of freehold or term of years, or any uncertain interest of, in, to, or out of any messuages, lands, tenements or hereditaments, made or created by livery and seizin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force."

Under that statute, if Heller's version is correct, Jentzsch *refused to perform* and thereby became a tenant at will with all the incidents attaching to such tenancy.

It is held generally that one in possession under a void contract of sale of real estate is a tenant at will. [24 Cyc. 1039-1040; Smith v. Singleton, 71 Ga. 68; Bur-

303 Mo. Sup.—29.

rows v. Fischer, 129 N. Y. Supp. 902; Rogers v. Hill, 64 S. W. 536.] That means the relation of landlord and tenant between Heller and Jentzsch is implied in the case of void agreement to sell.

V. If there was a total misunderstanding between the parties, they never did reach any agreement, and Jentzsch took possession under that misunderstanding, Seizin then after discovery of the misunderstanding be-
Only. tween the parties his interest in the premises was "created by livery and seizin only," and he became tenant at will, or if not that a tenant at sufferance only. [24 Cyc. pp. 1041-1042.]

VI. However, a tenancy at will of farm lands is construed to be a tenancy from year to year, and if a tenant chooses to continue the relation, sixty days' notice to quit is required. The relation of landlord and tenant is implied at common law, and by provision of Section 2167, quoted above. The rule is that where one in possession of land, whether as tenant or vendee, under an executory contract of purchase or otherwise, repudiates his contract, or denies the title of the true owner, he thereby determines the prior relationship, if any, and waives his preliminary right of notice to quit. [Lyon v. LaMaster, 103 Mo. 612; Amick v. Brubaker, 101 Mo. 473; Hammon v. Douglas, 50 Mo. l. c. 437; Hoover & Co. v. Pacific Oil Co., 41 Mo. App. l. c. 323; Young v. Ingle, 14 Mo. l. c. 304; 24 Cyc. pp. 1335-1336; Polson v. Parsons, 25 L. R. A. (N. S.) note, pp. 104, 105, 106, where the authorities are collated showing the rule to be universal.]

The purpose of a notice to quit is to terminate the relation between the parties. It presupposes an existing agreement under which the possession is held, whether that possession be that of tenant or of vendee. If there is no contractual relation between the parties, then there is nothing to terminate. In this case Jentzsch had no right to sixty days' notice to terminate the relation between him and the plaintiff, because he denied that he held in subordination to Heller, and asserted a hostile right in himself.

Under Section 2995, Revised Statutes 1919, unlawful detainer is defined as where a person wilfully and without force shall hold over any lands, etc., after the termination of the time for which they were devised or let to him, or "when any person wrongfully, and without force, by disseizin, shall obtain and continue in possession, and after demand made in writing for the delivery of the possession thereof by the person having legal right to such possession," etc., "shall be deemed guilty of unlawful detainer." The suit was brought under the second subdivision.

In this case written demand was made before suit was brought so that statute was complied with. There can be no doubt but that Jentzsch obtained possession wrongfully, whether by reason of a mutual mistake of the parties or by a wilful misrepresentation of the agreement. He had no right to possession until the parties had agreed upon the terms of the contract under which he should take possession.

Therefore, we hold that Heller had a right to sue for possession in unlawful detainer, and the judgment for unlawful detainer is therefore affirmed.

All concur.