Ira McNEILL and Bertie Bell McNeill, his
wife, Plaintiffs-Respondents,

v.

Jim McNEILL and Sylvia McNeill, his wife,
Defendants-Appellants.

No. 8942.

Springfield Court of Appeals,
Missouri.

June 22, 1970.

Joe R. Ellis, Cassville, for defendants-appellants.

Emory Melton, Cassville, for plaintiffs-respondents.

STONE, Judge.

In this jury-waived, court-tried unlawful detainer action instituted in the magistrate court on August 23, 1968, plaintiffs Ira McNeill and Bertie Bell McNeill, his wife, sought possession of a 53-acre farm (hereinafter sometimes called the farm) in Barry County on which their son and daughter-in-law, defendants Jim McNeill and Sylvia McNeill, his wife, resided. Defendants appeal from an adverse judgment.

Plaintiffs' complaint in conventional form alleged that defendants' prior occupancy of the described premises as tenants at will had terminated on July 31, 1968, but that, disregarding plaintiffs' written demand therefor, defendants wrongfully refused to quit possession. In due time, defendants filed their answer and defendant Jim interposed his counterclaim. After admitting their refusal to surrender possession and categorically denying all other allegations in the complaint, defendants affirmatively averred in their answer that the farm "formerly belonged to plaintiffs," who put defendant Jim in possession thereof on September 21, 1964, "under the terms of a verbal agreement to the effect that if he would take possession of the described property and improve it, plaintiffs would convey, deed and give" it to defendant Jim "within three years from said date of September 21, 1964"; that "in pursuance of said contract . . . and in reliance upon the promises so made by the plaintiffs," defendant Jim went into possession of the farm, thereafter resided thereon with his family, and made lasting and valuable improvements thereon. The

prayer of the answer was that plaintiffs' complaint be dismissed and that the court enter a "decree ordering the plaintiffs to specifically perform the contract and . . to make, execute and deliver" to defendant Jim a deed conveying the farm to him. In his counterclaim, defendant Jim sought, "in the alternative to the relief prayed for in defendants' answer," a money judgment for the reasonable value of labor and materials allegedly furnished by him in improving the farm and the dwelling thereon. Upon defendants' affidavit and application, the cause was transferred on change of venue from the magistrate court to the circuit court [§§ 534.150, 517.520] [1] where the following proceedings were had.

Plaintiffs' motion to strike, directed to the affirmative averments in defendants' answer and the entire counterclaim of defendant Jim, was sustained. Thereafter, leave was requested but denied for the filing of defendants' first amended answer, accompanied by defendant Jim's counterclaim and his verified statement characterized by defendants' counsel as "setting out facts showing a right to title in the property [the farm]." The tendered first amended answer pleaded (a) "for an affirmative defense" that plaintiffs' cause of action was "barred" by reason of defendants' "uninterrupted occupation and . . quiet possession" of the farm for more than three years prior to institution of the unlawful detainer action [§ 534.300] and (b) "for an equitable defense and cross-claim" that defendant Jim had been put in possession on September 21, 1964, under the hereinbefore-noted "oral agreement" with plaintiffs, who were "bound to convey" the farm to him. As in the original petition, the prayer was for a decree of specific performance compelling conveyance of the farm to defendant Jim. The tendered counterclaim was the same as that theretofore filed with the original answer. The verified statement of defendant Jim was simply an authenticated reiteration of the allegations in the amended answer pertaining to the "equitable defense and cross-claim."

Over plaintiffs' objection, leave was granted for the filing of defendants' second amended answer which pleaded the same "affirmative defense" and the same "equitable defense" as the rejected first amended answer but closed with a different prayer, to wit, that plaintiffs be denied the relief sought, their petition be dismissed, and costs be assessed against them. Following trial by the court, the case was taken under advisement, briefs were filed by opposing counsel and, on March 3, 1969, judgment was entered in which the court found for plaintiffs and ordered restitution of possession of the farm to them.

Plaintiffs have lived in Texas since 1906 except during the period from 1952 to 1956 when they dwelt on a 240-acre farm owned by them, which was situate between Butterfield and Wheaton. During a part of that four-year period, defendant Jim and his first wife resided with plaintiffs. How and when Jim's first marriage was dissolved are here unrevealed and unimportant, but apparently such change in marital status occurred prior to the latter half of 1964 when plaintiff Bertie, Jim's mother, "stayed with him four months" in an "old apartment" at Wheaton and "helped take care of his little girls." On September 21, 1964, plaintiffs purchased for $8,500 the 53-acre farm under consideration here, which on its north side adjoined the 240-acre farm still owned by them. There was a large, old residence on the 240-acre tract, but it was "in bad shape" and not then "liveable." As plaintiff Bertie commented, although "we lived in it when we lived up here [1952–1956], we didn't want him [defendant Jim] living in that house." A six-room frame house with "rock veneer on the outside" stood on the 53-acre farm, and plaintiffs' immediate purpose in acquir-

1.  Except where otherwise specifically stated, all statutory references are to RSMo 1959, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

ing that farm was to make a suitable home available to defendant Jim (said to have been his mother's "baby" and "favorite son" among four) and his two young daughters.

One Sanders, who was on the 53-acre farm when plaintiffs purchased it, remained there about two months and paid rental to plaintiffs. During the latter part of November 1964, defendant Jim and his two daughters moved into the dwelling on that farm. No writing of any character was executed by plaintiffs and defendant Jim, and their trial testimony bearing upon their oral understanding and legal relationship was conflicting. On the one hand, the essence of *plaintiffs' testimony* may be summarized thusly—it was agreed, when they wanted "the place," defendant Jim would surrender possession without requiring formal notice; he had the right to run cattle on the farm and had no obligation to pay any rent as such; but he was to pay the taxes on the farm, and work done and money spent by Jim in repairing or remodeling the dwelling or in improving the farm were to be treated as constituting consideration for his occupancy. On the other hand, *defendant Jim's testimony* was to the effect that plaintiffs said they were purchasing the farm for him and that plaintiff Ira told him to "fix everything up exactly like I wanted it because it was mine" and that "within three years, four at the most, he would turn it over to me . . . he was going to deed it to me." Both plaintiffs specifically and vigorously denied having made any such statements.

Defendant Jim married his present wife, defendant Sylvia, in May 1966 and a few months later, to wit, about November 1966, plaintiffs undertook an extensive remodeling of the dwelling occupied by defendants, which continued over a period of some four months and cost them "somewhere in the neighborhood of $6,000." Plaintiffs also made other expenditures on the farm (e. g., they "built some fences there and had some grass planted on the pastures"), so that "in labor and all, [they] had been out on the place somewhere pretty close to $8,550" in addition to the purchase price of $8,500. Defendant Jim testified that he had worked four months on the remodeling project and had made various expenditures in connection therewith, mentioning items aggregating almost $1,000, and that he had dug a pond on the farm at a cost of $60 and had put in permanent pasture. But plaintiff Ira said that if Jim spent "some of his own money" on the remodeling project, "I didn't know it . . . I bought the flooring and everything to go on—I wouldn't see why he would"; plaintiff Bertie stated that "he [Jim] checked on us all the time to pay for anything he has ever done"; and Jim's testimony confirmed the fact that he had freely availed himself of the privilege extended by his father (plaintiff Ira) to draw on the latter's bank account in Texas for such items (designated on various checks) as fruit trees, barn hinges, gate wire, fence repair, cement, lumber, supplies, and living room rug. The parties agree that defendants paid no rent to plaintiffs for the 53-acre farm or the dwelling thereon and that plaintiffs received no income of any character therefrom. During the last quarter of 1966, plaintiffs conveyed to defendant Jim as gifts (a) their 240-acre farm subject only to a deed of trust securing payment of an unpaid balance of about $5,000 and (b) "the Rhoades land," a tract of undisclosed acreage located (so we infer) in the same general neighborhood, which defendant Jim termed "a birthday present."

About June 19, 1968, plaintiffs sent a written "Notice of Termination of Tenancy" by certified mail, return receipt requested, directed to defendants at their mailing address, Route 2, Purdy, Missouri, which was delivered by the postman on June 21, 1968, to Jackie McNeill, then 10½ years of age, the daughter of defendant Jim who lived in the same household with him and defendant Sylvia. When asked what she did with the envelope delivered to her by the postman, Jackie said "I took it in to [defendant Sylvia] . . . she waited until my dad [defendant Jim] got home, then they opened it" that same day. This

"Notice of Termination of Tenancy" prepared by plaintiffs' attorney "notified [defendants] that your tenancy as tenants at will from month to month" of the described 53-acre farm "will terminate as of midnight on July 31, 1968, and you are hereby requested to quit possession thereof on such date and remove all your goods and chattels therefrom." Upon defendants' failure and refusal so to do, this unlawful detainer action was instituted.

■ Defendants' first and second complaints on appeal are directed to the sufficiency of the notice to quit and the service thereof. As defendants underscore, where a tenant enters into possession of farm lands under an oral agreement for an indefinite term [Vanderhoff v. Lawrence, Mo., 206 S.W.2d 569, 570], his tenancy at will becomes a tenancy from year to year [Womach v. Jenkins, 128 Mo.App. 408, 414, 107 S.W. 423, 425(4)] which may be terminated only by giving written notice to quit at least sixty days before the end of the term [§ 441.050; Fisher v. Lape, Mo.App., 176 S.W.2d 871, 873(1); Hauer v. Harkreader, Mo.App., 221 S.W. 813, 814(2, 3)], unless by special agreement notice is dispensed with. § 441.070. But defendants overlook the long-established principle that *"where one in possession of land*, whether as tenant or vendee, under an executory contract of purchase or otherwise, repudiates his contract, or *denies the title of the true owner*, he thereby determines the prior relationship, if any, and waives his preliminary right to notice to quit." Heller v. Jentzsch, 303 Mo. 440, 450, 260 S.W. 979, 981(7). (All emphasis herein is ours.) Instant plaintiffs' title to the 53-acre farm was denied by defendants in every pleading tendered or filed by them in this case. And when his own counsel inquired upon trial "why did you improve the place," defendant asserted "because it was mine"

and to the next question, "have you claimed this place as your own ever since you moved out there on it," responded with an unequivocal, unqualified "yes." Having assumed this stance, defendants waived their right to notice and will not be heard to complain about either the notice given by the plaintiffs or the manner of its service.[2]

■ Defendants next contend that plaintiffs' cause of action is barred by § 534.300 which states that the provisions of Chapter 534, Forcible Entry and Unlawful Detainer, "shall not extend to any person who has had the uninterrupted occupation or been in quiet possession of any lands or tenements for the space of three whole years together, immediately preceding the filing of the complaint . . .." Conceding that § 534.300 is not applicable in an unlawful detainer action against a defendant whose possession has been that of a tenant [F. A. Sander Real Estate & Inv. Co. v. Becker, Mo.App., 202 S.W.2d 549, 551(3)], counsel for instant defendants presses its applicability here on the premise that the possession of his clients was not that of tenants. Emphasizing that defendants had enjoyed quiet possession of the farm from November 1964 to July 31, 1968, their counsel argues that, "if a landlord be defined as the owner of a tenement to whom a tenant pays rent, or . . . the owner of an estate in lands [who] rents the same upon rental reserved, then the statute of limitations [§ 534.300] should here apply." But counsel cite, and we find, no such definition. In simplest terms, the relationship of landlord and tenant is defined as that which arises from a contract, express or implied, by which one person occupies the real property of another with his permission and in subordination to his rights, the occupant being known as the "tenant" and the person in subordination to whom he occupies as the "landlord."[3]

2. Heller v. Jentzsch, 303 Mo. 440, 450, 260 S.W. 979, 981(7); Lyon v. LaMaster, 103 Mo. 612, 15 S.W. 767; Amick v. Brubaker, 101 Mo. 473, 477, 14 S.W. 627, 628(2); Cook v. Penrod, 111 Mo. App. 128, 139–140, 85 S.W. 676, 679(3);

Equity Bldg. & Loan Ass'n. v. Murphy, 75 Mo.App. 57, 61.

3. Johnson v. Simpson Oil Co., Mo.App., 394 S.W.2d 91, 96(3); Marden v. Rad-

Such contract may be implied from "slight evidence" [Delay v. Douglas, Mo.App., 164 S.W.2d 154, 156(5)], "as from a permissive holding" [Starbuck v. Avery, 132 Mo. App. 542, 544, 112 S.W. 33, 34(2)—see Williams v. Treece, supra, 184 Mo.App. 135, 140, 168 S.W. 209, 211(4, 5)]; and, although usually incident thereto, reservation of rent by the owner is *not* essential to creation of the landlord-tenant relationship.[4]

■ The trial court found that the relationship between instant plaintiffs and defendants in the case at bar was that of landlords and tenants. True, the court expressed the further opinion that such tenancy of defendants "was from month to month," moved to that view as to the nature of the tenancy by his further findings that plaintiffs purchased the 53-acre farm "to afford defendant Jim McNeill a place to live," that it "was used by said defendant for that purpose," and that, although defendant Jim used the farm for agricultural purposes, "any use of the premises other than as a place to live was outside of or incidental to the scope of the original agreement between the parties." But on this appellate review it is wholly immaterial whether defendants were tenants from month to month, as the trial court held, or were tenants at will of farm lands under an oral agreement for an indefinite term, whose tenancy became one from year to year [Womach v. Jenkins, supra, 128 Mo. App. at 414, 107 S.W. at 425(4)], as is submitted in defendants' first point relied on here. Lyon v. LaMaster, 103 Mo. 612, 614, 15 S.W. 767. For, having disclaimed the title of their landlords, they were entitled to no notice at all. See again the cases cited marginally in note 2. The basic and determinative finding by the trial court was that the landlord-tenant relationship

existed. And that finding we unhesitatingly approve and affirm, mindful that due regard should be given to the superior opportunity of the trial court to judge of "the credibility [Rule 73.01(d); § 510.310 (4)] and characteristics of the witnesses who testified before him." Spaeth v. Larkin, Mo., 325 S.W.2d 767, 771(3); Bourne v. Manley, Mo.App., 435 S.W.2d 420, 429 (15), and cases there cited. Since defendants' possession of the farm was that of tenants, plaintiffs' cause of action is not barred by § 534.300. F. A. Sander Real Estate & Inv. Co. v. Becker, supra, 202 S. W.2d at 551(3).

■ In another point, defendants assign error (a) in the trial court's sustention of plaintiffs' motion to strike the affirmative averments in defendants' original answer and the entire counterclaim of defendant Jim and (b) in denial of defendants' request for leave to file their tendered first amended answer (pleading an "affirmative defense" in addition to the same "equitable defense and cross-claim") and defendant Jim's counterclaim and verified statement. In arguing this assignment, defendants complain that by those rulings the trial court in effect "refused to permit the defendants to place title in issue and refused to permit them to counterclaim for improvements made upon the [farm] during their occupancy." That indeed was the effect of what the court did but it was precisely what the court should have done. "By the very terms of the statute defining unlawful detainer [§ 534.030], a proceeding of such nature can only be a possessory action. In addition there is an express statutory prohibition [§ 534.210] against inquiring into the merits of title to the real property involved in such an action." Peoples Finance Corp. v. Lincoln, 345 Mo. 113, 114, 131 S.W.2d 520, 521(3). Thus, the

ford, 229 Mo.App. 789, 799, 84 S.W.2d 947, 954(5); Williams v. Treece, 184 Mo.App. 135, 140, 168 S.W. 209, 211(4); 51C C.J.S. Landlord & Tenant § 1, p. 31.

4. Williams v. Treece, supra note 3, 184 Mo.App. at 140, 168 S.W. at 211(4);

Wilkinson v. Wilkinson, 62 Mo.App. 249, 251; 51C C.J.S. Landlord & Tenant § 2(2)a, l. c. 34; 49 Am.Jur.2d Landlord & Tenant § 514, p. 494; 1 Taylor, Landlord and Tenant (9th Ed.) § 14, p. 11; 1 Tiffany, Landlord and Tenant § 165, p. 1009.

sole issue in any such action is the right of possession;[5] equitable rights and defenses may not be interposed therein;[6] and "[t]he merits of the title shall in nowise be inquired into . . . ." § 534.210.[7]

Ignoring or overlooking § 534.210, the above-stated principles and the cited authorities, defendants nevertheless insist that, when they tendered their first amended answer seeking "specific performance of the oral agreement, in effect praying that the court permit them to try the title" to the farm, together with the counterclaim and verified statement of defendant Jim, title was put in issue and "in accordance with § 517.330" the trial court was required to "permit the defendants to assert their right to title . . . and try the issue." In this, counsel mistakes and misconceives the scope and relevance of § 517.330 in Chapter 517, Magistrate Court Procedure, which provides, generally speaking, for the transfer to circuit court of any action in which title to real estate is put in issue, subject however to this limitation, "provided, that in no case shall the provisions of this section apply to actions for forcible entry and detainer *or* for unlawful detainer *or* to proceedings, to recover possession of property as otherwise provided by law in cases of actions between landlord and tenant, unless *in the last mentioned case,* the party filing such pleading shall file therewith a statement, in writing, setting forth in detail the material facts in relation to said real estate by which the title thereto is put in issue in such case and the same [is] duly verified by the oath of the defendant or some credible person in his behalf . . . ." Upon perspicacious analysis of this proviso, it becomes clearly apparent that it is directed to and deals with three categories of cases, namely, (1)

actions for forcible entry and detainer, (2) actions for unlawful detainer, and (3) "proceedings to recover possession of property as otherwise provided by law in cases of actions between landlord and tenant," i. e., proceedings brought under Chapter 535, Landlord-Tenant Actions in Magistrate Courts; that the transfer provisions of § 517.330 are in no event applicable in any action in either of the first two categories; and that only "in the last mentioned case," i. e., in a proceeding in the third category, may the magistrate transfer if title to real estate is put in issue by a pleading supported by a verified statement in writing setting forth in detail the material facts by which such issue is raised.

The legislative history of § 517.330 and its predecessor statute dealing with like procedure in justices' courts confirms the correctness of our construction. In § 6219, Chap. 94, Justices' Courts, RSMo 1889 (the predecessor statute), the proviso under consideration read in its entirety, "[*p*]*rovided, that in no case shall the provisions of this section apply to actions for forcible entry and detainer, or for unlawful detainer,"* thus having been directed to and having dealt with only two categories of cases. In Graham v. Conway, 91 Mo.App. 391, 395, the decisive question was the validity of a judgment for plaintiff in an unlawful detainer suit in a justice court rendered after defendant had filed therein " 'a paper writing setting up an equitable title to the premises . . . and requesting the justice to certify the said cause to the circuit court, which request was denied.' " The court observed, 91 Mo.App. at 397, that "[t]he said exception [the above-quoted proviso in § 6219, RSMo 1889] welded onto [§ 6219] expressly denies to justices of the peace in actions like the present [unlawful

5. Beery v. Hoelzel, Mo.App., 171 S.W.2d 741, 743(1) ; Joseph v. Horan, Mo.App., 29 S.W.2d 234, 235; Drzewiecki v. Stock-Daniel Hardware Co., Mo.App., 293 S.W. 441, 444(5) ; Graham v. Conway, 91 Mo.App. 391, 396(1).

6. Noonan v. Mason, Mo.App., 285 S.W. 118, 119(1) ; Porter v. Gibbs, Mo.App., 242 S.W. 1016, 1017(2) ; Drzewiecki v.

Stock-Daniel Hardware Co., supra note 5, 293 S.W. at 444(6) ; Joseph v. Horan, supra note 5, 29 S.W.2d at 235.

7. Peoples Finance Corp. v. Lincoln, 345 Mo. 113, 114, 131 S.W.2d 520, 521(2, 3) ; Olivia Inv. Co. v. McKee, Mo.App., 86 S.W.2d 617, 618(3) ; Prendergast v. Graverman, 166 Mo.App. 33, 40, 147 S.W. 1094, 1096(6).

detainer] the authority to certify when the title to real estate is in issue" and then pointed out that § 5111, RSMo 1889 [the predecessor of § 534.210], "denies to justices of the peace the jurisdiction to inquire into the merits of the title to real estate."

In § 3951, RSMo 1899 [the predecessor of § 517.330], the above-quoted proviso in § 6219, RSMo 1889, was expanded by adding the following language at the end thereof to include a third category of cases, to wit, "or to proceedings to recover possession as provided under section 4131, chapter 44 [Landlords and Tenants], of these Revised Statutes [the predecessor of § 535.020, Chap. 535, Landlord-Tenant Actions], unless in the last mentioned case, the party filing such pleading shall file therewith a statement, in writing, setting forth in detail the material facts in relation to said real estate by which the title thereto is put in issue in such case and the same duly verified by the oath of the defendant or some credible person in his behalf . . . ." In each subsequent decennial statutory revision through 1939, the predecessor of § 517.330 included the expanded proviso in the same language with a specific statutory reference to the predecessor of § 535.020 in the landlord-tenant chapter of that revision.[8] When the statutory code relating to magistrates was enacted in 1945, the language of § 2619, RSMo 1939, with appropriate changes in terminology but no change in substance or meaning, was brought forward and embodied in the statute now codified as § 517.330 [Laws 1945, p. 784, § 57], with the same expanded proviso including the same third category of cases described in this language, "or to proceedings, to recover possession of property as otherwise provided by law [§ 535.020, Chap. 535, Landlord-Tenant Actions] in cases of actions between landlord and tenant . . . ." The specific prohibition imposed by § 534.210 that "[t]he merits of the title shall in nowise be inquired into, on any complaint which shall be exhibited by virtue of the provisions of this chapter [Chap. 534, Forcible Entry and Unlawful Detainer]" is not denied, contradicted, impugned or in any respect weakened by § 517.330, for by its terms the latter is clearly inapplicable in any unlawful detainer action.

■ Defendant Jim's further contention that he was entitled to "recover for repairs and improvements on the premises" and that, therefore, it was error to strike his counterclaim, to which counsel cites only §§ 524.160 to 524.180, incl., in Chapter 524, Ejectment, is wholly without merit. The statutes pertaining to practice and proceedings in forcible entry and unlawful detainer constitute a special, exclusive and preclusive code [McIlvain v. Kavorinos, 361 Mo. (banc) 749, 758, 236 S.W.2d 322, 327–328 (11); McIlvain v. Kavorinos, 358 Mo. (banc) 1153, 1157, 219 S.W.2d 349, 351(2); Gary Realty Co. v. Kelly, 278 Mo. 450, 467, 214 S.W. 92, 97(4)], which is full and complete in itself and leaves us without authority to draw upon other general statutory provisions. First National Bank of Kansas City v. Kavorinos, Mo., 283 S.W.2d 452, 457; State ex rel. Kelly v. Trimble, 297 Mo. (banc) 104, 118, 247 S.W. 187, 191. We repeat that the sole issue in any unlawful detainer action is the right of possession. See again cases cited marginally in note 5. Of course, it necessarily follows that any rights conferred upon plaintiffs or lost by defendants by reason of this action are wholly possessory. Bussen v. Del Commune, Mo., 195 S.W.2d 666, 668; Peoples Finance Corp. v. Lincoln, supra, 345 Mo. at 114, 131 S.W.2d at 521; Graham v. Conway, supra, 91 Mo.App. at 398.

Another point in defendants' brief is that "the trial court failed to draft an opinion

8. The predecessor of § 517.330 in each decennial revision and the landlord-tenant statute [the predecessor of § 535.020], to which specific reference was made therein, were as follows: § 7460, RSMo 1909, referring to § 7904, Chap. 68; § 2783, RSMo 1919, referring to § 6901, Chap. 55; § 2233, RSMo 1929, referring to § 2607, Chap. 12; § 2619, RSMo 1939, referring to § 2994, Chap. 13.

and include therein a statement of the grounds for its decision as requested by the defendants." After the taking of evidence had been concluded and "Defendants' Motion for Directed Verdict [sic]" had been overruled on January 30, 1969, the court announced that it would take the case under advisement. Twelve days later, to wit, on February 11, 1969, defendants filed their written "Request for Findings of Fact and Grounds for Decisions [sic]" in which they asked the court "to draft an opinion and to include therein a statement of the grounds for its decision, its findings on the following facts," followed by sixteen numbered paragraphs, each of which set forth one or more matters or subjects on which findings were sought. Detailed written findings as to all of those matters were placed of record by the court when judgment was entered on March 3, 1969; but defendants assert that those findings did not satisfy the requirement of Rule 73.01(b) [§ 510.310(2)] that, "[i]f any party shall so request before final submission of the case, the court shall . . . file a brief opinion containing a statement of the grounds for its decision . . . and may, or if specifically requested by counsel, shall, include its findings on any of the principal controverted fact issues."

 Although the quoted requirement is mandatory [Witte v. Cooke Tractor Co., Mo.App., 261 S.W.2d 651, 660(24)], it is clearly conditioned upon a *"request before final submission of the case"* [Maas v. Dreckshage, Mo.App., 244 S.W.2d 397, 403(4)]; and the submission is "final" when the evidence and arguments are finished or waived and the court, as trier of the facts, takes the case, whether for immediate decision or merely under advisement preliminary to rendition of judgment. McIntosh v. White, Mo.App., 447 S.W.2d 75, 77–78(2); Payne v. White, Mo.App., 288 S.W.2d 6, 7–8(2). Hence, instant defendants' request twelve days after the case had been taken under advisement came too late, and error cannot be predicated on the court's failure, if so, to comply therewith more fully. Furthermore, the court's detailed findings of fact were comprehensive and adequately reflected its views on all issues in the case and thus "the grounds for its decision." In these circumstances, it may not fairly be said that the omission to file a formal opinion materially affected the merits of the action or in any wise circumscribed, hindered, limited, impeded or interfered with our full appellate review de novo. State ex rel. State Highway Com'n. v. Carlton, Mo.App., 453 S.W.2d 642, 652; Witte v. Cooke Tractor Co., supra, 261 S.W.2d at 661(26). Accordingly, such omission affords no basis for setting aside the judgment nisi. Rule 83.13(b); § 512.160(2).

Our approval and affirmation of the finding that the relationship of plaintiffs and defendants was that of landlords and tenants is dispositive of other generalized complaints in defendants' brief, and further discussion here is not indicated or necessary.

The judgment for plaintiffs should be and is affirmed.

TITUS, P. J., and HOGAN, J., concur.